949 P.2d 38

CITY OF TUCSON, a municipal corporation, Plaintiff/Appellee,

v.

PIMA COUNTY, a body politic; Raul Grijalva, Mike Boyd, Ray Carroll, Sharon Bronson and Dan Eckstrom, as Members of the Pima County Board of Supervisors, Defendants/Appellants.

No. 2 CA–CV 97–0135.

Court of Appeals of Arizona, Division 2, Department B.

Oct. 28, 1997.

Barbara LaWall, Pima County Attorney by Katharina Richter, Tucson, for Defendants/Appellants.

Thomas J. Berning, City Attorney by Thomas J. Berning and Tobin Rosen, Tucson, for Plaintiff/Appellee.

Shelley & Bethea, P.L.C. by J. LaMar Shelley, Mesa, for Amicus Curiae, League of Arizona Cities and Towns.

## OPINION

HOWARD, Judge.

Pima County appeals the trial court's judgment in favor of the City of Tucson, which declared that A.R.S. § 11–371 authorizes the County to issue Highway User Revenue Fund (HURF) revenue bonds for projects within incorporated areas of the County without restriction. We vacate the court's judgment.

The state collects fuel and vehicle taxes, vehicle registration and license fees, and other transportation-related revenues and places them in the HURF. A.R.S. § 28–6533 (formerly § 28–1598(A)).[1] Pursuant to a comprehensive distribution scheme, the legislature divides HURF monies among the state highway fund, the counties, incorporated cit-

---

[1] Effective October 1, 1997, A.R.S. Titles 2 (Aeronautics), 18 (Highways and Bridges), and 28 (Transportation) were repealed, and a new Title 28 was added. 1995 Ariz. Sess. Laws, ch. 132, amended by 1996 Ariz. Sess. Laws, ch. 76. Our citations are to the new statutes with a reference to the repealed statutes when applicable. The language of the new statutes does not change our legal conclusion.

ies and towns, and other transportation-related agencies and funds. A.R.S. §§ 28–6534 through 28–6546 (formerly § 28–1598). The bulk of the monies is distributed, approximately, as follows: 50% to the state highway fund, 20% to the counties, and 30% to incorporated cities and towns. § 28–6538(A) (formerly § 28–1598(D)). Each city and county is allocated its share of the total city or county money pursuant to another statutory formula. § 28–6540(2) and (3) (formerly § 28–1598(E)).

Section 11–371, A.R.S., gives counties authority to issue HURF revenue bonds[2] as follows:

A county, in addition to other powers conferred upon it by law, may borrow money and issue bonds for the purpose of improvement, construction, reconstruction, acquisition of rights-of-way or maintenance of county streets and highways.

Title 11, article 12, dealing with "Street and Highway Improvement Bonds," does not define "county streets and highways." Incorporated cities and towns have identical authority to issue HURF revenue bonds for municipal streets and highways. A.R.S. § 48–681.

Prior to this litigation, the Pima County Attorney issued an opinion stating that § 11–371 limits the use of County HURF revenue bonds to those streets and highways constructed and maintained by the County and located outside incorporated areas of the County. The City argued below, and the trial court ruled, that § 11–371 does not geographically limit HURF revenue bond projects, as long as the streets and highways are within the County.

■ We review de novo the interpretation of a statute. *Turf Paradise, Inc. v. Maricopa County,* 179 Ariz. 337, 878 P.2d 1375 (App.1994). In construing a statute, we attempt to determine and give effect to the legislature's intent, *Lewis v. Arizona Department of Economic Security,* 186 Ariz. 610, 925 P.2d 751 (App.1996), and consider "the statute's context; its language, subject matter, and historical background; its effects and consequences; and its spirit and purpose." *Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994).

The City argues that, notwithstanding any other language in the statute, the phrase "in addition to other powers conferred upon it by law" expands the potential use of County HURF bond funds to streets and highways within incorporated areas. We disagree. We note that § 48–681, which regulates the City's authority to issue HURF revenue bonds, contains identical language. The phrase in both statutes simply means §§ 11–371 and 48–681 do not prohibit the County and City from issuing other bonds unrelated to HURF monies or taking other legally authorized action in addition to using bonds to improve streets.

■ In its brief, the City further argues that "county streets and highways" means any street or highway within the County, whether within an incorporated city or not. At oral argument, without abandoning its original position, the City suggested a more limited approach: in determining when County HURF revenue bonds may be used for projects within incorporated areas, § 11–371 should be read in conjunction with other statutes relating to the establishment of county highways.

In examining the language of the statute, we presume the legislature included the word "county" in § 11–371 for some purpose and not as mere surplusage. *Adams v. Bolin,* 74 Ariz. 269, 247 P.2d 617 (1952). If the legislature did not intend to limit the use of County HURF revenue bonds in any way, it would not have needed to insert "county" before "streets and highways." Clearly, a county cannot exercise its powers beyond its borders. *See, e.g.,* A.R.S. § 11–201; *Associated Dairy Products v. Page,* 68 Ariz. 393, 206 P.2d 1041 (1949). The legislature, therefore, must have intended "county" in § 11–371 to act as a limitation on the types of streets and highways within the County that are covered by the statute.

**2.** Principal and interest on bonds issued pursuant to § 11–371 must be paid with HURF monies. A.R.S. §§ 11–373(A)(4), 11–377(D).

■ We construe together statutes on the same subject matter. *State ex rel. Larson v. Farley,* 106 Ariz. 119, 471 P.2d 731 (1970). Section 11–371 authorizes counties to issue HURF revenue bonds for projects on county streets and highways, and § 48–681 authorizes cities to issue HURF revenue bonds for projects on municipal streets and highways. In view of the legislature's comprehensive distribution of HURF funds, the legislature, by differentiating between projects for which the County or City can use HURF revenue bonds, has indicated an intention that the two entities use their HURF revenue bonds on different types of projects.

The County relies on the definition of "county highway" in A.R.S. § 28–101(12) (formerly § 28–101(14)) as a "public road constructed and maintained by a county." Adopting this definition would be consistent with the general distribution of authority between counties and cities. *See, e.g., Lake Havasu City v. Mohave County,* 138 Ariz. 552, 675 P.2d 1371 (App.1983) (county board of health's jurisdiction limited to area within county but outside city's corporate limits); A.R.S. § 40–283 (use of highways by public utilities not within any incorporated city or town is regulated by county board of supervisors). The definitions in § 28–101, however, apply "[i]n this title [28]." Since § 11–371 is part of Title 11, the definition in § 28–101(12) is not determinative of the issue.

The City argues that § 11–371 incorporates Article IX, § 14 of the Arizona Constitution, which does not restrict the use of HURF funds to county highways, but rather, limits the use of HURF funds by counties and incorporated cities and towns to:

> highway and street purposes including costs of rights of way acquisitions and expenses related thereto, construction, reconstruction, maintenance, repair, roadside development, of county, city and town roads, streets, and bridges and payment of principal and interest on highway and street bonds.

Similarly, § 28–1598(A) provides in part that "[t]he revenues in the Arizona highway user revenue fund shall only be expended for the purposes prescribed in article IX, § 14, Constitution of Arizona." According to the City, it would be inconsistent to allow the use of general county HURF funds on city streets,[3] but restrict the use of County HURF revenue bonds to highways constructed and maintained by a county. That the legislature specifically used limiting words with reference to HURF revenue bonds in § 11–371 and not as to general HURF funds, however, bolsters the argument that it intended to limit the use of revenue bonds. Further, Article IX, § 14 does not require that HURF funds be expended for all listed projects; it limits the overall expenditure of HURF funds to the listed projects. Section 11–371, therefore, does not conflict with the constitutional provision.

The legislature has demonstrated its intended allocation of HURF funds between the counties and cities by enacting a complex, comprehensive distribution scheme and revising it frequently. Taken to its extreme, the City's original interpretation would allow County HURF revenue bond funds to be used for projects on state roads and interstate highways within the county. It is unlikely the legislature intended such a result. Imposing some limitation on the use of County HURF revenue bonds, therefore, preserves the legislature's calculated and considered allocation.

The City also argues that two other statutes include streets in incorporated areas in the county system and, therefore, within the § 11–371 definition of "county streets and highways." First, the City cites A.R.S. § 28–6707(A) (formerly § 18–208), which states:

> The part of a highway located in an incorporated city or town may be constructed, improved or maintained through cooperation under this article in the same manner as if it were located outside an incorporated city or town.

Section 28–6707 must be read, however, in conjunction with other provisions in that arti-

---

**3.** We have not been asked to, and do not, decide the propriety of the County's use of general HURF funds on streets in incorporated areas.

cle. *Sandblom v. Corbin*, 125 Ariz. 178, 608 P.2d 317 (App.1980). Section 28–6701(A), A.R.S., provides that "[t]he board of supervisors may establish ... a highway in the county and other legal subdivisions...." It then provides for a petition process, which must be followed to establish the highway. A.R.S. §§ 28–6701(B) through 28–6704. Counties also may "lay out" county highways pursuant to § 11–251(4) for eminent domain purposes. *Maricopa County v. Anderson*, 81 Ariz. 339, 344, 306 P.2d 268, 271 (1957) (§ 28–6707 is not "the exclusive method by which boards of supervisors may establish county highways and condemn property therefor"). These statutes specifically allow part of a county highway to be in other legal subdivisions, such as incorporated cities within the county. Highways established pursuant to these statutes, therefore, are county highways under § 11–371, whether within or without an incorporated area, and County HURF revenue bonds may be used for such projects.

The City next asserts that the County may designate a city street as a county highway pursuant to § 28–7049, which provides:

A. If the streets of an incorporated city or town form necessary or convenient links for the connection of sections of state highways or state routes, or for carrying the state highways or state routes through the city or town, the director and the governing body of the city or town, in the case of state highways, or the board of supervisors and the governing body of the city or town, in the case of state routes, may agree that the streets are deemed state highways or county highways, respectively.

B. The agreement shall provide for maintenance of the streets classified pursuant to this section.

If streets of an incorporated city or town are properly designated as county highways pursuant to § 28–7049 and the other provisions of that article, they fit within the language of § 11–371. The County claims that § 28–7049(B) limits the statute to maintenance agreements on these streets. We disagree. Although subsection B requires that a main-

tenance agreement be part of any such designation, it does not limit the designation in subsection A solely to maintenance.

We hold, therefore, that, with regard to the use of County HURF revenue bonds for projects within incorporated areas, Pima County is authorized, but not required, to use County HURF revenue bonds: (1) for those parts of county highways, created pursuant to §§ 28–6701 through 6704 or 11–251(4), that lie within the boundaries of an incorporated city or town, in accordance with § 28–6707 and (2) on city streets lawfully designated as county highways pursuant to A.R.S. § 28–7049. Pima County is not permitted, however, to use HURF revenue bonds for other projects within the boundaries of an incorporated city or town.

Both parties have advanced cogent policy arguments to support their positions. The County argues that allowing County HURF revenue bonds to be used within incorporated areas encumbers its future stream of HURF revenue, over which it has no control. The legislature or the economy could reduce that revenue stream and leave the County without unencumbered HURF funds for future projects. This is different, the County argues, than general obligation bonds, which the County can pay by raising taxes. The City argues that the legislature has expressed a preference for regional planning and that citizens of incorporated areas are citizens of the County and are entitled to receive the full benefit of the County's HURF funds. While each argument is persuasive, we decide this case based on the language of § 11–371, read in conjunction with the other relevant statutes discussed above. Any changes in that language or imposition of express restrictions on use of County HURF revenue bonds must be left to the legislature.

The judgment of the trial court is vacated.

PELANDER, P.J., and ESPINOSA, J., concur.