In re Brian Mitchell WOODWARD, Debtor.

Patrick J. Malloy III, Trustee, Plaintiff,

v.

St. John Medical Center, Orthopaedic Surgery Centers James Slater, M.D., Defendant.

Bankruptcy No. 97–05149–M.
Adversary No. 98–0316–M.

United States Bankruptcy Court, N.D. Oklahoma.

May 11, 1999.

Patrick J. Malloy, III, Tulsa, OK, for plaintiff.

Terrence P. Brennan, Tulsa, OK, for defendant.

### MEMORANDUM OPINION

TERRENCE L. MICHAEL, Bankruptcy Judge.

THIS MATTER was submitted to the Court on stipulated facts and briefs. At issue is whether certain liens held by St. John Medical Center ("St. John's"), Orthopaedic Surgery Centers ("OSC") and James Slater, M.D. ("Slater") may be avoided by Patrick J. Malloy III ("Malloy"), the trustee in this Chapter 7 bankruptcy case. For the reasons set forth herein, the Court concludes that the liens are subject to avoidance. The following findings of fact and conclusions of law are made pursuant to Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52.

### Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).[1] Reference to the Court of this contested matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(K).

### Findings of Fact

This matter was submitted to the Court on a Stipulation of Facts (the "Stipulation") filed by the parties on April 16, 1999. On the basis of said stipulation, the Court makes the following factual findings:

1. Brian Mitchell Woodward ("Woodward" or "Debtor") was injured in a May 18, 1996, automobile accident (the "Accident") involving Beatrice Stackhouse ("Stackhouse").

2. St. John's, OSC and Slater provided medical services for Woodward relating to injuries suffered by Woodward in the Accident.

3. On September 24, 1996, St. John's filed its Notice of Hospital Lien (the "St. John's Lien") on the mechanic's and materialmen's lien docket in the Office of County Clerk of Tulsa County, Oklahoma.

4. The St. John's Lien does not contain an itemized description of the services rendered by St. John's to Woodward.

5. On October 18, 1996, St. John's sent a copy of the St. John's Lien via certified mail, return receipt requested to Jonathan Sutton ("Sutton"), who at the time was acting as attorney for Woodward.

6. On October 21, 1996, St. John's sent a copy of the St. John's Lien via certified mail, return receipt requested, to ITT/Hartford, the liability insurance carrier for Stackhouse.

7. Sometime between October 18, 1996, and October 21, 1996, St. John's sent a copy of the St. John's Lien via certified mail, return receipt requested, to Woodward.

8. On December 5, 1996, OSC and Slater filed their Notice of Hospital Lien (the "OSC/Slater Lien") on the mechanic's and materialmen's lien docket in the Office of County Clerk of Tulsa County, Oklahoma.

9. The OSC/Slater Lien does not contain an itemized description of the services rendered by OSC and/or Slater to Woodward, nor does it contain a statement of the amount owed by Woodward to OSC and/or Slater.

10. On May 7, 1997, Stackhouse offered to settle all claims which Woodward may have had against her as a result of the accident in exchange for a cash payment of $100,000.00.

11. On November 3, 1997, Woodward filed his petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Case") with this Court. Malloy has been appointed as trustee in this case. Sidney K. Swinson ("Swinson") is currently counsel of record

---

1. Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (West 1999).

for Woodward in the Bankruptcy Case.

12. On November 19, 1997, OSC and Slater filed their Amended Notice of Physician's Lien (the "Amended OSC/Slater Lien") on the mechanic's and materialmen's lien docket in the Office of County Clerk of Tulsa County, Oklahoma.

13. The Amended OSC/Slater Lien included an itemized description of the services rendered by OSC and/or Slater to Woodward.

14. On November 25, 1997, OSC and Slater faxed a copy of the Amended OSC/Slater Lien to the attorneys for Stackhouse, and hand-delivered a copy of the Amended OSC/Slater Lien to Woodward.

15. On February 19, 1999, OSC and Slater prepared and signed a Second Amended Notice of Physician's Lien (the "Second Amended OSC/Slater Lien"). The Stipulation submitted to the Court does not state whether the Second Amended OSC/Slater Lien was filed on the mechanic's and materialmen's lien docket in the Office of County Clerk of Tulsa County, Oklahoma.

16. The Second Amended OSC/Slater Lien included an itemized description of the services rendered by OSC and/or Slater to Woodward.

17. The Second Amended OSC/Slater Lien was served by certified mail, return receipt requested, upon Swinson, Paul Boudreaux, counsel for ITT/Hartford and Stackhouse, Malloy and Sutton. The Second Amended OSC/Slater Lien was also attached to pleadings filed by OSC/Slater in the Bankruptcy Case.

18. On February 19, 1999, St. John's prepared and executed an Amended Notice of Hospital Lien (the "Amended St. John's Lien"). The Stipulation submitted to the Court does not state whether the Amended St. John's Lien was filed on the mechanic's and materialmen's lien docket in the Office of County Clerk of Tulsa County, Oklahoma.

19. The Amended St. John's Lien included an itemized description of the services rendered by St. John's to Woodward.

20. The Amended St. John's Lien was served by certified mail, return receipt requested, upon Swinson, Paul Boudreaux, counsel for ITT/Hartford and Stackhouse, Malloy and Sutton. The Second Amended OSC/Slater Lien was also attached to pleadings filed by OSC/Slater in the Bankruptcy Case.

21. The $100,000.00 settlement offer from Stackhouse remains pending. None of the money has as of yet been paid.

In addition to the stipulated facts, the Court on its own motion takes judicial notice of the fact that currently pending before this Court is a Motion to Settle Disputed Matter filed September 24, 1998. *See Docket No. 51.* Under the terms of the Motion to Settle, Stackhouse and/or ITT/Hartford would cause the payment of $100,000.00 to the estate. From this sum, Sutton would receive a payment of $40,-000.00 in recognition of an attorney's lien which he holds, and Woodward would be paid the sum of $45,000.00 in recognition of the exemption in personal injury settlement proceeds which he has claimed pursuant to Okla.Stat.Ann. tit. 31, § 1(A)(21) (West 1991 & Supp.1999). The remaining $15,000.00 would be used by Malloy to pay administrative expenses and claims in this estate. This Court has deferred ruling on the Motion to Settle until this adversary proceeding is completed. *See Docket No. 92M.*

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of

Fact," they are incorporated herein by this reference.

## Burden of Proof

In general, the party asserting the avoidability of a transfer, i.e., the Trustee, has the burden of proof by a preponderance of the evidence. *See Consol. Partners Inv. Co.*, 152 B.R. 485, 488 (Bankr.N.D.Ohio 1993) (and cases cited therein); *see also In re Gomes*, 219 B.R. 286, 291 (Bankr.D.Or.1998) (and cases cited therein). However, where the Trustee challenges a post-petition transfer pursuant to § 549 of the Bankruptcy Code, the burden is upon the party asserting the validity of the transfer to prove the same by a preponderance of the evidence.[2] *See* Fed.R.Bankr.P. 6001; *see also In re Auxano Inc.*, 96 B.R. 957, 961 (Bankr.W.D.Mo. 1989).

## Issues Presented

In order to resolve this adversary proceeding, the Court must address and resolve the following issues:

(1) Whether the St. John's Lien and/or the OSC/Slater Lien constituted properly perfected liens against Woodward on November 3, 1997, the date the Bankruptcy Case was filed; and

(2) If not, whether the execution, filing and service of the Amended OSC/Slater Lien, the Second Amended OSC/Slater Lien, and the Amended St. John's Lien constituted post-petition transfers avoidable by Malloy under § 549 of the Bankruptcy Code.

## Conclusions of Law

*Pre–Petition Perfection of the St. John's and the OSC/Slater Liens*

The liens claimed by St. John's and OSC/Slater are creatures of statute. In order for the St. John's lien to be properly perfected, the lien must be in writing and must contain:

(1) an itemized statement of the amount claimed;

(2) the name and address of the injured person;

(3) the name and address of the hospital; and

(4) the name and address of the persons, firms and/or corporations allegedly liable to the injured party for the injuries at issue.

*See* Okla.Stat.Ann. tit. 42, § 44(A) (West 1990 & Supp.1999). In addition, a copy of the lien as filed must be sent by certified mail, return receipt requested, to the injured party as well as to the persons, firms and/or corporations allegedly liable to the injured party for the injuries at issue. *See id.* Unless these steps are taken, the lien is of no force and effect. Similar requirements exist under Oklahoma law for the creation of an enforceable physician's lien. *See* Okla.Stat.Ann. tit. 42, § 46(C)(1) (West 1990 & Supp.1999).

In the present case, the St. John's Lien did not contain an itemized statement of the amount claimed. Instead, the St. John's Lien contains a statement of the *total* amount claimed by St. John's, with no detail regarding the charges incurred. As such, the St. John's Lien fails to comply with the statutory requirements for perfection. At the time Woodward filed his bankruptcy case, St. John's did not hold an enforceable hospital lien under Oklahoma law.

The OSC/Slater Lien which was filed prior to the filing of this bankruptcy case was defective in the following respects:

(1) It did not contain any statement of the amount claimed, let alone an itemized statement;

(2) It did not contain the name and address of the persons, firms and/or

2. Many courts have held that the trustee has the initial burden to establish that a transfer took place, and only then shifts the burden of proof to the party asserting the validity of the claim. *See* 10 Lawrence P. King, Collier on Bankruptcy, ¶ 6001.01[2] (15th ed. rev.1999) (and cases cited therein).

corporations allegedly liable to Woodward for his injuries.

(3) It was not sent by registered or certified mail to Woodward or to anyone else against whom OSC/Slater were making a claim.

As such, the OSC/Slater Lien fails to comply with the statutory requirements for perfection. At the time Woodward filed his bankruptcy case, neither OSC nor Slater held an enforceable lien against Woodward or Stackhouse under Oklahoma law.

■ St. John's and OSC/Slater contend that both of their pre-petition liens were properly perfected, notwithstanding the patent defects in each. St. John's and OSC/Slater argue that the mere fact that their liens were filed of record pre-petition was sufficient to place the Trustee on notice of their claims, such notice is sufficient for perfection and any and all deficiencies in the filings should be excused. This Court disagrees for several reasons.

■ Oklahoma courts have consistently held that in order for a statutory lien to be enforceable, the exact terms of the statute creating the lien must be complied with.

> Liens can be created either by contract or by law. A statutory lien, such as that created by § 148, stands in derogation of the common law. It must hence be strictly confined to the ambit of the enactment giving it birth.

*Riffe Petroleum Co. v. Great National Corp., Inc.,* 614 P.2d 576, 579 (Okla.1980) (hereafter "*Riffe*"); *accord, Balfour v. Nelson,* 890 P.2d 916, 919 (Okla.1994) ("Courts cannot ignore the terms prescribed by a statute creating a lien.") (citing *Riffe* ); *accord, In re Tefertiller,* 772 P.2d 396, 398 (Okla.1989). Bankruptcy courts in this state have recognized and adopted this principle of statutory construction.. *See In re Weaver,* 41 B.R. 649, 653 (Bankr. W.D.Okla.1984); *see also In re Bunker Exploration Co.,* 48 B.R. 708, 710 (Bankr. W.D.Okla.1985); *see also In re George Rodman, Inc.,* 38 B.R. 822, 823–824

(Bankr.W.D.Okla.1984) ("... lien statutes, being in derogation of common law, are strictly construed when determining whether the statutory provisions have been satisfied."); *see also In re Mahan & Rowsey, Inc.,* 27 B.R. 883, 885 (Bankr. W.D.Okla.1983) ("Since such [statutory] liens are in derogation of the common law, Oklahoma has construed its lien statutes strictly."). In the present case, neither the St. John's Lien nor the Slater/OSC satisfy the requirements of the Oklahoma statutes.

■ St. John's and OSC/Slater argue that this Court should look past the defects in their lien positions and find their liens to be valid because the purpose and intent behind the Oklahoma medical lien laws is to insure that medical providers are paid. This may be true; however, it does not create a legal basis for this Court to judicially repeal portions of the Oklahoma statutes in order to reach a specific result. This Court may not create a right out of a sense of equity or fairness where one does not exist. The Oklahoma Supreme Court recently held that

> Liens are property rights and it is not the function of the courts to create them from a sense of justice in a particular case. Liens can be created either by contract or by law. A statutory lien such as the hospital lien at issue stands in derogation of the common law and must be strictly construed. A lien that is not provided by the clear language of the statute cannot be created by judicial fiat, for the words of the statute are the measure of the right and the remedy. A court cannot create a lien out of a sense of fairness if the terms of the statute are found too narrow and have not been met.

*Kratz v. Kratz,* 905 P.2d 753, 756 (Okla. 1995) (citations omitted). St. John's and OSC/Slater ask this Court to judicially repeal those provisions of the medical lien statutes with which they failed to comply, such as the requirement that a detailed statement of services rendered be provid-

ed and that copies of the lien be sent to certain parties. The Court declines to do so. If St. John's and/or OSC/Slater take issue with the statutory requirements for creations of medical liens in this state, they should address their concerns to the Oklahoma Legislature.

*Avoidance Powers of the Bankruptcy Trustee*

 Under § 544(a)(1) of the Bankruptcy Code,

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists

The rights of the bankruptcy trustee to avoid a lien are established under state law. *See e.g., In re APC Constr. Inc.*, 112 B.R. 89, 121 (Bankr.D.Vt.1990) (" 'Simply stated, Federal law bestows the hypothetical lien status, State law determines its parameters.' ") (citation omitted); *see also In re Glanz*, 205 B.R. 750, 753 (Bankr.D.Md.1997). Once the lien is avoided, the property subject to the lien is property of the estate free and clear of the claims of any particular creditor, and is administered for the benefit of the estate. *See* § 551; *see generally In re Heintz*, 198 B.R. 581, 584 (9th Cir. BAP 1996). In the present case, neither St. John's nor OSC/Slater held a lien against any property of Woodward which would have been superior to a judgment lien entered against Woodward on the date the Bankruptcy Case was filed. As such, Malloy has the power to avoid both the St. John's Lien and the OSC/Slater Lien under § 544(a)(1).

*Effect of Efforts of St. John's and OSC/Slater to Perfect Their Liens Post–Petition*

The parties have stipulated that after Woodward filed the Bankruptcy Case, St. John's and OSC/Slater made attempts to correct the deficiencies in their respective liens as outlined above. The Court assumes for purposes of its decision that these actions, if allowed to stand, would operate to make the liens effective under Oklahoma law. The question is whether the actions of St. John's and OSC/Slater are avoidable by Malloy under § 549 of the Bankruptcy Code.

 Under § 549(a), a bankruptcy trustee may avoid any transfer of property of the estate that "occurs after the commencement of the case" and is "not authorized under this title or by the court." The section makes reference to exceptions under § 303(f) and § 542(c) of the Bankruptcy Code, neither of which are applicable here.[3] A "transfer" is defined to include "every mode, direct or indirect, voluntary or involuntary, of disposing of or parting with property or an interest in property." *See* § 101(54). The perfection of an involuntary lien constitutes a transfer for purposes of this section. *See generally* 2 King *et al., Collier on Bankruptcy*, ¶ 101.54[1] & [2] (15th ed. rev.1999); *see also In re Bangert*, 226 B.R. 892, 898 (Bankr.D.Mont.1998) (Section 101(54) adopts an expansive definition of transfer which includes "every mode ..., voluntary or *involuntary*, ... of disposing of or parting with property or with an interest in property.") (emphasis added

---

**3.** Section 303(f) deals with involuntary bankruptcy cases. *See* § 303. The present case was voluntarily filed by Woodward. Section 542(c) deals with good faith payment to a third party of sums owing to a debtor. *See* § 542(c). It is inapplicable to the facts of this case.

and citation omitted). To the extent the actions taken by St. John's and OSC/Slater serve to perfect the liens which they now claim, they are avoidable under § 549(a).

St. John's and OSC/Slater argue that the actions which they have taken to perfect their liens are authorized under § 362(b)(3) of the Bankruptcy Code, which provides that

> (b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—
>
>> (3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property *to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title* . . .

(emphasis added). St. John's and OSC/Slater argue that § 546(b) authorizes the steps they have taken to perfect their liens post-petition. Section 546(b) provides that

> (b)(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that—
>
>> (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or
>>
>> (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.
>
> (2) If—
>
>> (A) a law described in paragraph (1) requires seizure of such property or commencement of an action to accomplish such perfection, or maintenance

> or continuation of perfection of an interest in property; and
>
>> (B) such property has not been seized or such an action has not been commenced before the date of the filing of the petition;
>
> such interest in such property shall be perfected, or perfection of such interest shall be maintained or continued, by giving notice within the time fixed by such law for such seizure or such commencement.

§ 546(b). This section creates an exception to the general rule that a party may not take any action to perfect a security interest after the filing of a bankruptcy petition.

A leading treatise on bankruptcy has stated that

> The operation of section 546(b)(1)(A) may be best understood by example. Under section 9–301(2) of the Uniform Commercial Code, perfection of a purchase money security interest within 20 days after the debtor receives possession of the collateral relates back to defeat an intervening lien creditor whose rights arose during the period between attachment of the security interest and perfection of the security interest. If a bankruptcy petition is filed during the 20–day period, the holder of the purchase money security interest may nonetheless effectuate perfection during the 20-day period in accordance with section 9–310(2). The holder's interest is thereafter superior in priority to the interest of any intervening lien creditor, including the trustee as a hypothetical lien creditor under section 544(a) of the Bankruptcy Code, and is deemed perfected before the commencement of the case. By the terms of section 546(b)(1), the lien is also not avoidable as a post-petition transfer under section 549 of the Bankruptcy Code.

5 King, *et. al. Collier on Bankruptcy* ¶ 546.03[2][a] at pp. 546–21 and 546–22 (15th ed. rev.1999). The question in this case is whether the filing of amended lien

documentation by St. John's and/or OSC/Slater post-petition relates back to the filing date of their original liens. If so, Malloy may not avoid either the St. John's Lien or the OSC/Slater Lien. If not, § 546(b) does not apply, and the Trustee's avoiding powers remain intact. *See, e.g., In re Houts,* 23 B.R. 705, 706–707 (Bankr. W.D.Mo.1982) (§ 546(b) "evidences a policy to permit post-petition perfection of a statutory lien to be effective against the trustee *if perfection could relate back to defeat the rights of an intervening creditor.*") (citation omitted) (emphasis added).

■■■ Unfortunately for St. John's and OSC/Slater, there is nothing in either the hospital lien statutes or the physician's lien statutes of the State of Oklahoma which would indicate that the act of filing a properly documented hospital lien and/or physician's lien somehow relates back to the original (flawed) filing. Both statutes require that, in order for the lien to be "effective," all of the steps outlined in each statute must be completed. *See* Okla.Stat. Ann. tit. 42, § 44(A) (West 1990 & Supp. 1999), and *see* Okla.Stat.Ann. tit. 42, § 46(C)(1) (West 1990 & Supp.1999). The steps taken by St. John's and OSC/Slater after Woodward filed his bankruptcy case, if not avoided, would perfect their liens as of the date those steps were taken; they would not relate back to the date the first liens were filed. As a result, § 546(b) does not render the automatic stay inapplicable to the post-petition perfection attempts of either St. John's or OSC/Slater.[4]

■■■ One of the main cases cited by St. John's and OSC/Slater in support of their position, *Balfour v. Nelson,* 890 P.2d 916 (Okla.1994) (hereafter "*Balfour*"), supports the conclusion reached by this Court. In *Balfour,* a physician who had rendered services to patients who had claims for damages against a third party as a result of an automobile accident filed a physician's lien in 1989 and 1990. In 1992, the physician discovered that a personal injury settlement between her patients and the tortfeasor who had caused the injuries was imminent and filed her physician's liens once again. The patients argued that because the physician had failed to commence an action to collect the amounts due to her within one year of the filing of the first physician's liens, she was barred from re-filing the liens.[5] The trial court agreed, and refused to allow the physician to enforce her liens. The Oklahoma Court of Civil Appeals affirmed. The Oklahoma Supreme Court reversed the decision of the lower courts, and held that the physician was entitled to enforce the *second set of liens* which she had filed. That Court defined the issue before it as follows:

> The sole issue presented is whether a doctor, who filed a physician's lien statement against the personal injury settlement proceeds of her patient pursuant

---

4. In their brief, St. John's and OSC/Slater note that under Oklahoma law, a mechanic's lien relates back to the date work is commenced. They are correct in this regard. *See* Okla.Stat.Ann. tit. 42, § 141 (West 1990 & Supp.1999). However, the Oklahoma mechanic's lien statute expressly states that liens created under its provisions

> shall follow said property and each and every part thereof, and be enforceable against the said property wherever the same may be found, and compliance with the provisions of this act shall constitute constructive notice of the claimant's lien to all purchasers and encumbrancers of said property or any part thereof, subsequent to the date of the furnishing of the first item of material or the date of the performance of

the first labor or the first use of the rental equipment on said land.

*Id.* Neither the hospital lien statute nor the physician's lien statute contain any similar provision. As a result, the Court reads those statutes as they have been drafted, and concludes that they do not relate back to the date medical services are provided. Such a reading seems especially appropriate in light of the analysis contained in *Balfour* and discussed *infra.*

5. Under the terms of Okla.Stat.Ann. tit. 42, § 46(D) (West 1990 & Supp.1999), physicians' liens "may be enforced by civil action in the district court of the county where the lien was filed. Such action shall be brought within one (1) year from the time of the filing of the lien with the county clerk."

to 42 O.S.1991 § 46 but did not seek to enforce it within one year, can *reestablish* a lien claim against such proceeds by filing the same lien statement before the personal injury claim settled and before the statute of limitations ran on the underlying medical services contract. We answer this question in the affirmative.

*Balfour*, 890 P.2d at 918 (emphasis added). The Court also concluded that

> The expiration of the one year time limit of § 46(C) does not bar a timely refiling of a lien. *Rather, the time limit operates only to prevent a physician from enforcing a particular lien after the first anniversary of its filing.* A § 46 physician's lien filed before the injured patient has received any proceeds in settlement of her personal injury claim and before the statute of limitations has run on the underlying obligation is valid and enforceable if suit is brought to enforce it within one year. This is true regardless of whether the same services or amounts were included in a previously filed but unenforced lien.

*Id.* at 920 (emphasis added). *Balfour* stands for the proposition that a physician may refile his or her lien, but it also stands for the proposition that it is the *second* lien, and *not* the first lien, which is enforced. The filing of the second lien does not relate back to the first lien in any way, shape or form. As a result, §§ 362(b)(3) and 546(b) of the Bankruptcy Code do not create an exception to the automatic stay for the refiling of a physician's lien or a

hospital lien under Oklahoma law. The filing of either of such liens after the filing of a bankruptcy case is prohibited under the terms of § 362(a)(4) of the Bankruptcy Code,[6] and is void and of no force and effect.[7]

### Conclusion

All of the liens claimed by St. John's and OSC/Slater may be avoided by Malloy using the powers granted to him under § 549 of the Bankruptcy Code.

A separate order consistent with the terms and provisions of this Memorandum Opinion is entered concurrently herewith.

---

6. Section 362(a)(4) of the Bankruptcy Code provides that the filing of a petition in bankruptcy operates as a stay of "any act to create, perfect, or enforce any lien against property of the estate."

7. St. John's and OSC/Slater also rely upon the decision of the United States Bankruptcy Court for the Eastern District of New York in *In re Thorogood*, 22 B.R. 725 (Bkrtcy.E.D.N.Y. 1982) (hereafter *"Thorogood"*) in support of their argument that their liens may not be avoided. This reliance is misplaced for two reasons. In *Thorogood*, there was no dispute that the hospital liens at issue were properly

perfected under New York law. Here, the Court has concluded that both St. John's and OSC/Slater failed to properly perfect their liens under Oklahoma law prior to the filing of this case. In addition, the trustee in *Thorogood* sought to avoid the liens at issue there under § 545 of the Bankruptcy Code, which sets forth the powers of a bankruptcy trustee to avoid statutory liens. In this case, Malloy relies upon the avoiding powers granted to him under §§ 544 and 549. As a result of these two factors, *Thorogood* is inapplicable to the present case.