36 P.3d 57

Linda ANDREWS; Shirley S. Barrells;
Linda A. Krystek; Kristina J. Markland;
Nancy McCartney–Mergele (nka Nancy
McCartney–Bratcher); William O.
Parks, III; Christopher Porter; Michael
Robert Smith; and Charles Joseph Weir-
ick, on behalf of themselves and other
natural persons similarly situated,
Plaintiffs–Appellants,

v.

SAMARITAN HEALTH SYSTEM, an Ari-
zona corporation; Banner Health Sys-
tems, a North Dakota corporation, De-
fendants–Appellees.

No. 1 CA–CV 00–0386.

Court of Appeals of Arizona,
Division 1, Department E.

Dec. 11, 2001.

provider contracts with the hospitals. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Plaintiffs [1] were all injured by the negligence of third–parties and as a result became patients at the hospitals. The services the hospitals provided plaintiffs were covered by plaintiffs' various health insurance plans. Six of the nine plaintiffs were covered under a type of health care service organization (HCSO); the other three were covered under a preferred provider organization (PPO) or another managed care organization (MCO).

¶ 3 Pursuant to the provider contracts between the hospitals and the insurers, the hospitals received payment from the insurers in an amount less than the full charges for their services. Each provider contract, except Markland's, contained language reserving to the hospitals the right to recourse against third-party payors and most specifically referenced the medical lien statute. All of the contracts had some type of language indicating that the insurers' discounted payments were "payment in full" for treatment.[2]

¶ 4 Eventually all of the plaintiffs filed personal injury lawsuits against the third-party tortfeasors who caused their injuries. In their various personal injury suits, plaintiffs all quantified their damages by including the hospitals' full charges for medical services, rather than the discounted amount paid by their insurers.

¶ 5 The hospitals filed medical liens, also known as "recapture liens," against all of the plaintiffs except Parks to recover the unpaid portion of plaintiffs' treatment. It is undisputed that the medical liens were all untimely recorded under A.R.S. § 33–932, the lien perfection statute.

¶ 6 Plaintiffs brought this declaratory judgment action to prevent the hospitals

Hagen, Bohm, Boyle & Jones, P.C. by Tom J. Hagen, Phoenix, Attorneys for Plaintiffs–Appellants.

Gammage & Burnham, P.L.C. by Richard B. Burnham, and Cameron C. Artigue, Phoenix, Attorneys for Defendant–Appellee.

THOMPSON, Judge.

¶ 1 Plaintiffs in this class action appeal from the entry of summary judgment in favor of Samaritan Health System and Banner Health Systems (the hospitals). The trial court found that the hospitals may validly enforce medical liens pursuant to Arizona Revised Statutes (A.R.S.) § 33–931 (2000) against plaintiffs for the balance of the hospitals' customary charges not paid by plaintiffs' health insurers (insurers) pursuant to the

1. The named plaintiffs are Linda Andrews, Shirley S. Barrells, Linda A. Krystek, Kristina J. Markland, Nancy McCartney–Mergele (nka Nancy McCartney–Bratcher), William O. Parks, III, Christopher Porter, Michael Robert Smith, and Charles Joseph Weirick. As necessary, we will use the last name to refer to an individual plaintiff.

2. For convenience we will use the term "payment in full" in our analysis, although the various contracts used different terminology to express that the insurer is responsible only for the contracted discount amount. We address only the plaintiffs' strongest case scenario, the "payment in full" language, in our analysis.

from enforcing medical liens against judgments plaintiffs obtained in tort actions against the third–parties or the third-parties' liability insurers. *See* A.R.S. § 33–931. The parties filed cross motions for summary judgment.

¶ 7 The trial court granted summary judgment in favor of the hospitals, finding that the medical liens were valid, that the hospitals could assert liens for amounts under $250, and that voluntary payments made by plaintiffs were not subject to reimbursement for conversion. The trial court also found that the untimely recording of the medical liens did not affect their validity. Plaintiffs timely appealed. This court has jurisdiction pursuant to A.R.S. § 12–2101(B) (1994).

## ISSUES

1. If the plaintiffs' insurers paid a contracted discount rate as "payment in full" for treatment, can the hospital still assert recapture liens pursuant to A.R.S. § 33–931 against plaintiffs' tort recoveries for the unpaid customary cost of services?

2. May the hospitals assert recapture liens against enrollees of Health Care Services Organizations given the protections of A.R.S. § 20–1072?

3. Is the reservation of a recapture lien in the provider contracts an unenforceable assignment of plaintiffs' personal injury claims?

4. May the hospitals assert recapture liens in amounts less than $250?

5. Are the hospitals' recapture liens invalid because they were not recorded timely under the medical lien perfection statute, A.R.S. § 33–932?

6. Are voluntary payments made by Smith and Weirick subject to reimbursement as funds converted by the hospitals?

## STANDARD OF REVIEW

■ ¶ 8 "Summary judgment is appropriate when there are no genuine issues of

material fact and the moving party is entitled to judgment as a matter of law." *Orme Sch. v. Reeves,* 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). We review both the propriety of summary judgment and issues of statutory interpretation de novo. *Arizona Health Care Cost Containment Sys. v. Bentley,* 187 Ariz. 229, 231, 928 P.2d 653, 655 (App.1996) (citation omitted).

## DISCUSSION

### I. THE VALIDITY OF THE HOSPITALS' MEDICAL LIENS

¶ 9 Plaintiffs argue that, under the hospitals' contracts with their insurers, their care was paid in full leaving no debt upon which the hospitals could base medical liens. The hospitals respond that the balance of the customary charges, after payment by the insurers, constitutes the "debt" supporting the medical liens. We agree with the hospitals.[3]

■ ¶ 10 In Arizona, a lien "is a charge or encumbrance upon property to secure the payment or performance of a debt, duty, or other obligation.... In the absence of an obligation to be secured there can be no lien." *Matlow v. Matlow,* 89 Ariz. 293, 297–98, 361 P.2d 648, 651 (1961) (citations omitted). Section 33–931(A) provides

Every [health care provider] is entitled to a· lien for the customary charges for care and treatment or transportation of an injured person, on all claims of liability or indemnity except health insurance for damages accruing to the person to whom the services are rendered, or to that person's legal representative, on account of the injuries that gave rise to the claims and that required the services.

¶ 11 These facts present an issue of first impression in Arizona. Plaintiffs cite several cases from other jurisdictions to support a claim that when a health care provider accepts an insurer's payment as "payment in full," the debt is extinguished and there is no basis for asserting a medical lien. *See Sat-*

---

**3.** Our ruling presumes a factual discrepancy exists between the hospitals' full charges, customary charges and the discounted amounts paid by various insurers. The parties did not raise this issue on appeal and we will not resolve this evidentiary issue here.

*sky v. United States,* 993 F.Supp. 1027, 1029 (S.D.Tex.1998); *N.C. ex rel. L.C. v. A.W. ex rel. R.W.,* 305 Ill.App.3d 773, 239 Ill.Dec. 244, 713 N.E.2d 775, 776 (1999); *Dorr v. Sacred Heart Hosp.,* 228 Wis.2d 425, 597 N.W.2d 462, 468, 471–72 (App.1999); *Wright v. First Nat'l Bank in Albuquerque,* 123 N.M. 417, 941 P.2d 498, 500–02 (1997). While each of the above cases found that no debt existed to support a lien because the provider accepted the insurer's payment as "payment in full," those cases are distinguishable in two ways.

■ ¶ 12 First, the contracts in each of the above cases failed to reserve the providers' right to recapture the difference between the contract payments and the customary charges. *See id.* Conversely, the instant contracts each contained language stating that the hospitals accepted the plaintiffs' insurer's payment as "payment in full," and all but Markland's expressly reserved the right to recapture the difference between any payments made by the insurer and the providers' customary charges. Unlike the contracts in the cases from other jurisdictions, this reservation clearly qualifies the "payment in full" language and sets forth the hospitals' expectation to recover their customary charges when possible.

¶ 13 Second, and more importantly, by virtue of A.R.S. § 33–931, medical liens automatically arise following treatment. The statute states that a provider "is entitled to a lien for the customary charges for care and treatment . . . of an injured person" without specifying further action by the hospitals. A.R.S. § 33–931(A). This conclusion is evidenced in the perfection statute, which states, "[i]n order to perfect a lien granted by A.R.S. § 33–931. . . ." This holding is in accord with those in other jurisdictions with medical lien statutes similar to Arizona's. *See Macon–Bibb County Hosp. Auth. v. Nat'l Union Fire Ins. Co.,* 793 F.Supp. 321, 323 (M.D.Ga.1992) (the lien exists automatically after treatment); *Guin v. Carraway Methodist Med. Ctr.,* 583 So.2d 1317, 1319 (Ala.1991); *see also Pub. Health Trust of Dade County v. Carroll,* 509 So.2d 1232, 1234 (Fla. 4th DCA 1987) ("lien attaches at the moment an injured person is admitted").

■ ¶ 14 We hold that a medical lien is automatically granted by A.R.S. § 33–931 upon the care and treatment of a person injured by the negligence of a third party. Of course, this is non-recourse debt, rather than personal debt. A hospital may enforce statutory liens even where there is no personal recourse available directly against a patient. *LaBombard v. Samaritan Health Sys.,* 195 Ariz. 543, 991 P.2d 246 (App.1998) (liens against tort recovery of AHCCCS members enforceable even when there is "no right to recover directly" from patient). The fact that the hospitals have no personal recourse against plaintiffs, by virtue of their insurance coverage, does not alter the fact that a debt remains between the hospitals' customary charges and the amounts paid by plaintiffs' insurers. *See Provident Nat'l Assurance Co. v. Sbrocca,* 180 Ariz. 464, 467, 885 P.2d 152, 155 (App.1994).

¶ 15 We find that not only do all but one of the provider contracts create an obligation for payment of the customary charges, but that our legislature has provided the hospitals with a means to secure that obligation through an automatic lien. *See* A.R.S. § 33–931. Providers may collect this "debt" pursuant to the medical lien statute. *Id.* This is true even though the hospitals here were compensated according to the bargained-for terms in the provider contracts. Thus, the hospitals may assert liens against all plaintiffs' tort recoveries including Markland's.

¶ 16 This result is supported by the cases that involve coordination of benefits. For example, in *Nahom v. Blue Cross & Blue Shield,* 180 Ariz. 548, 554–55, 885 P.2d 1113, 1119–1120 (App.1994), this court held that when a patient had two insurance policies and the first had an unconditional "payment in full" clause, the hospital was still entitled to collect from the second policy under the coordination of benefits language. There, like here, a "payment in full" clause did not totally extinguish the debt. *See id.*

¶ 17 This result is also in alignment with the statutes applicable to Arizona Health Care Cost Containment System (AHCCCS) and Medicare patients. Under Arizona law, hospitals may not impose personal liability on AHCCCS patients; however, hospitals may

assert medical liens against tort proceeds for the balance of the charges not paid by AHCCCS. *See* A.R.S. §§ 36–2903.01(J)(4), 36–2903.01(N)(Supp.2000); A.R.S. § 11–291(F) (allowing county providers to recover from indigent tort recoveries); *see also* 42 U.S.C. §§ 1395w–22(a)(4), 1395mm(e)(4)(Supp.2000) (hospitals treating Medicare patients may enforce liens as provided under their contracts); 42 C.F.R. §§ 417.528(b); 422.108(d)(2000) (Medicare HMOs and Medicare +Choice organizations may charge or authorize a provider to charge any other applicable insurance, including liability insurance, for services or charge the enrollee to the extent he or she was paid for covered medical expenses). Although these statutes preclude a hospital from attempting to collect directly from an AHCCCS member or eligible person, *see* A.R.S. § 36–2903.01(N), the Arizona legislature authorized providers to "collect any unpaid portion of its bill from other third party payors or in situations covered by [A.R.S. § 33–931]." A.R.S. § 36–2903.01(J)(4).

¶ 18 Accordingly, the hospitals were entitled to assert medical liens to recover the unpaid balance of their customary charges against plaintiffs' tort recoveries. We affirm.

## II. SECTION 20–1072 DOES NOT SHIELD HCSO ENROLLEES FROM MEDICAL LIENS

¶ 19 Six of the nine plaintiffs also argue that, as enrollees of HCSOs, they are entitled to protection from medical liens under A.R.S. § 20–1072. Section 20–1072 protects HCSO enrollees from liability for any amount the insurer owes the provider or hospital for covered services. *See* A.R.S. § 20–1072(A)–(C). Another section provides that

> [n]o provider or hospital may charge an enrollee of a [HCSO] more than the amount the provider or hospital contracted to charge the enrollee pursuant to the provider's contract or hospital's contract with the [HCSO].

A.R.S. § 20–1072(F). Finally, under A.R.S. § 20–1072(D), health care providers are prohibited from maintaining a legal action against or otherwise collecting from enrollees except for copayments, the cost of uncovered services, and the cost of services rendered after termination of the provider contract. A.R.S. § 20–1072(D). No mention is made of medical liens. Plaintiffs assert that these recapture liens violate A.R.S. § 20–1072 as to HCSO enrollees. We disagree.

¶ 20 The medical lien statute, A.R.S. § 33–931 is written broadly enough to allow the hospitals to file medical liens against insured patients as well as non-insured patients and against HCSO enrollees as well as AHCCCS enrollees. Plaintiffs ask us to impose an exclusion on the medical lien statute for HCSO enrollees that the legislature did not include. "Whenever possible, we will interpret two apparently conflicting statutes in a way that harmonizes them and gives rational meaning to both." *Calik v. Superior Court*, 194 Ariz. 188, 191, 979 P.2d 1, 4 (App.1998) (citation omitted), *vacated on other grounds*, 195 Ariz. 496, 990 P.2d 1055 (1999).

¶ 21 Just as a medical lien is not a personal debt, lien enforcement is not the same as billing or collecting from the enrollee. The hospitals are not billing or bringing legal action against the HCSO enrollees, as prohibited by A.R.S. § 20–1072, by asserting recapture liens; they are asserting a statutory lien against the enrollee's tort claim. These are two different actions.

¶ 22 Under this holding, medical liens are allowed under A.R.S. § 33–931 and HCSO enrollees are still protected from personal liability for covered services owed by the insurer. Our interpretation gives full effect to both statutes without harming either. To hold otherwise would result in the nonsensical result that HCSO enrollees are subject to a different application of the medical lien statute than are AHCCCS members or PPO/MCO members.

¶ 23 We hold that A.R.S. § 20–1072 does not preclude the hospitals' medical liens against HCSO enrollees.

## III. ASSIGNMENT OF PERSONAL INJURY CLAIMS

¶ 24 Plaintiffs next argue that any reservation of a medical lien in the provider

contracts is an unenforceable assignment of plaintiffs' personal injury claims. *See Lingel v. Olbin,* 198 Ariz. 249, 252, ¶ 6, 8 P.3d 1163, 1166 (App.2000) (assignment of cause of action for personal injuries is void and unenforceable). We disagree.

¶ 25 The legislature, in limited circumstances, may abrogate the rule against assigning tort claims. *See Talley v. Indus. Comm'n,* 137 Ariz. 343, 346, 670 P.2d 741, 744 (App.1983). The medical lien statute represents the legislature's abrogation of that rule. The abrogation effected by the medical lien statute serves to ease the financial burden on providers and to encourage hospitals to render emergency care to patients without regard to ability to pay. *See LaBombard,* 195 Ariz. at 548, ¶ 18, 991 P.2d at 251; *Gartin v. St. Joseph's Hosp. & Med. Ctr.,* 156 Ariz. 32, 35, 749 P.2d 941, 944 (App.1998). Here, the plaintiffs' insurers did not assign any rights to the hospitals. Rather, the right to the medical liens springs from A.R.S. § 33–931. We see no reason to invalidate the medical lien statute as written by the legislature given its obvious value and purpose.

¶ 26 Accordingly, we hold that the contracts setting forth the providers' right to assert a statutory medical lien are not an illegal assignment of plaintiffs' personal injury claims.

## IV. MEDICAL LIENS UNDER $250

¶ 27 Plaintiffs claim that, under A.R.S. § 33–931(C), the hospitals may not assert their liens for less than $250 against Park and Weirick. Section 33–931(C) provides, in part, that medical liens

> are applicable to all customary charges by hospitals or ambulances of political subdivisions but are restricted to customary charges in excess of [$250] by all other providers and privately owned ambulance companies. . . .

The hospitals argue that the statute entitles hospitals to liens for all customary charges, but limits other providers and privately owned ambulance companies to liens in excess of $250. We agree.

¶ 28 In *LaBombard,* this court stated that "the phrase 'all customary charges,' in sub-section (B) indicates that even non-public hospitals are entitled to assert a lien for 'all customary charges . . . in excess of [$250].'" 195 Ariz. at 548, ¶ 19, 991 P.2d at 251. However, in *LaBombard* the amount of the medical lien was not at issue and it was well in excess of $250. *See id.* We are not obligated to follow dicta and, thus, proceed to an analysis of whether liens can be asserted by privately owned hospitals for amounts under $250. *See Arizona Dep't of Econ. Sec. v. Superior Court,* 181 Ariz. 469, 472, 891 P.2d 936, 939 (App.1994).

¶ 29 We find that the meaning of A.R.S. § 33–931(C) is not readily clear. When statutory language is subject to different interpretations, we will adopt an interpretation "that is most harmonious with statutory scheme and legislative purpose." *Saenz v. State Fund Workers' Comp. Ins.,* 189 Ariz. 471, 474, 943 P.2d 831, 834 (App. 1997) (citation omitted). We consider "the statute's context; its language, subject matter and historical background, its effects and consequences; and its spirit and purpose." *City of Tucson v. Pima County,* 190 Ariz. 385, 386, 949 P.2d 38, 39 (App.1997) (citation omitted). The purpose of the medical lien statute is to "lessen the burden on hospitals and other medical providers imposed by non-paying accident cases." *LaBombard,* 195 Ariz. at 548, ¶ 18, 991 P.2d at 251 (quoting *In re Guardianship of Bloomquist,* 246 Neb. 711, 523 N.W.2d 352, 356 (1994)). Providing hospitals a means of recovery induces hospitals to render emergency care to patients without regard to ability to pay. *See Gartin,* 156 Ariz. at 35, 749 P.2d at 944 (citation omitted).

¶ 30 The statutory language grants liens to "hospitals or ambulances of political subdivisions" without regard to amount. A.R.S. § 33–931(C). Plaintiffs contend that the phrase "of political subdivisions" modifies both hospitals and ambulances. However, the legislature's subsequent use of the term "privately owned ambulance companies" indicates an intent to distinguish only the types of ambulance companies. This is supported by the "last antecedent rule" as applied in Arizona; where there is a qualifying phrase we will apply the phrase only "to the word or

phrase immediately preceding as long as there is no contrary intent indicated." *See Phoenix Control Sys., Inc. v. Ins. Co. of N. Am.,* 165 Ariz. 31, 34, 796 P.2d 463, 466 (1990). We find no contrary intent and apply the last antecedent rule to allow the hospitals' liens for all customary charges and to limit other providers and privately owned ambulance companies to liens in excess of $250.

¶ 31 Both the language and the legislative history of A.R.S. § 33–931 suggest a legislative intent to allow hospitals to assert medical liens regardless of the amount. In fact, the medical lien statute originally gave liens only to hospitals and without limitation on the amount. *See* 1988 Ariz. Sess. Laws, ch. 280 § 2. When the legislature later amended the statute, it expanded lien rights to all private and governmental health care providers and private and governmental ambulance companies. *Id.* There is no indication that the legislature intended to limit liens by hospitals and, in fact, perfected hospital liens are given priority for payment over all other medical liens. *See* A.R.S. § 33–931(C).

¶ 32 For the above stated reasons, we decline to adopt an interpretation that reduces the lien rights the hospitals have always enjoyed under the lien statute and we hold that private hospitals are entitled to assert medical liens for "all customary charges" without regard to amount.

## V. UNTIMELY RECORDING OF MEDICAL LIENS

¶ 33 Plaintiffs contend that the hospitals' medical liens were not perfected in a timely manner and are unenforceable and invalid. The medical lien is automatically granted by A.R.S. § 33–931 upon the care and treatment of a person injured by the negligence of a third party. To perfect a medical lien, a provider must file the lien within thirty days of the patient's discharge. A.R.S. § 33–932. The filing of a lien is constructive notice of the claim. *Id.* The purpose of A.R.S. § 33–932 is to give notice of medical lien rights and to determine priority among medical liens.

¶ 34 "Although Arizona lien statutes are remedial and are to be liberally construed, their provisions must be strictly followed." *Nationwide Mut. Ins. Co. v. Arizona Health Care Cost Containment Sys.,* 166 Ariz. 514, 517, 803 P.2d 925, 928 (App. 1990). There is no Arizona case construing the medical lien recording statute. Plaintiffs urge us to adopt a rule of strict compliance as to the thirty-day deadline of the lien perfection statute and, to that end, cite cases requiring strict compliance with recording requirements to enforce medical liens. *See, e.g., In re Woodward,* 234 B.R. 519, 523–24 (Bankr.N.D.Ok.1999); *In re Harris,* 50 B.R. 157, 160–61 (Bankr.E.D.Wis.1985); *Duke Univ. Med. Ctr. v. Hardy,* 89 N.C.App. 719, 367 S.E.2d 6, 7 (1988).

¶ 35 We decline to require strict compliance with A.R.S. § 33–932, the medical lien perfection statute, when the purpose of the statute is adequately served under the facts at issue. We agree with the proposition that

[s]tatutes giving hospitals a lien against a patient's recovery from a tortfeasor causing the patient's injuries for which the hospital has rendered its services contain various requirements with respect to the time for filing liens and various notices of lien ... such requirements should not be technically applied so as to defeat just hospital claims, and that such statutes are to be liberally construed in this respect.

*Public Health Trust,* 509 So.2d at 1233 (quoting 25 A.L.R.3rd 874, Section 5(b)). This court has previously found that, in some situations, substantial compliance with a lien statute will suffice. *See Lewis v. Midway Lumber, Inc.,* 114 Ariz. 426, 431, 561 P.2d 750, 755 (App.1977) (addressing a mechanics lien). *Lewis* held that where the defect in recording "is material to the perfection of a lien, it is beyond the remedial scope of equity ... to protect the lien claimant against the untoward consequences of what may be and probably was his own neglect." 114 Ariz. at 432, 561 P.2d at 756. Following *Lewis,* our next consideration is whether the untimely recording is material to the perfection of these liens.

¶ 36 If we were determining priority among multiple lienholders, timeliness would, of course, be material. Here, there are no

other potential creditors. The money at issue is either going to the plaintiffs or to the hospitals. The hospitals assert that timeliness is not material here because plaintiffs had actual notice of the full charges of their treatments, as was evidenced by the personal injury lawsuits filed seeking recovery of those amounts.

¶ 37 We agree that if a patient has actual notice of the full charges of treatment, he or she is not prejudiced by the untimely filing of the lien. One who has "actual notice is not prejudiced by and may not complain of the failure to receive statutory notice." *In the Matter of the Estate of Ivester*, 168 Ariz. 323, 327, 812 P.2d 1141, 1145 (App.1991). Thus, as to the patient with actual notice of the hospital's lien, the purpose of the recording statute is not frustrated by the untimely recording of the medical lien. *See Macon–Bibb*, 793 F.Supp. at 323 (where medical lien was untimely pursuant to the perfection statute, hospital could assert lien where patient had actual notice before settlement); *Guin*, 583 So.2d at 1319 (citations omitted) (declining to defeat hospital's lien under perfection statute where there were no competing creditors to be prejudiced by the late filing because the perfection statute is for the benefit of third-parties, not the patient); *Pub. Health Trust*, 509 So.2d at 1234. It is undisputed that plaintiffs here had actual notice of the full charges.

¶ 38 Arizona's medical lien statute requires timely filing only to "perfect" the lien. A.R.S. § 33–932. The perfection, however, does not alter the existence of the lien which arises under a different statute. *See* A.R.S. § 33–931.

¶ 39 We will not apply the terms of the statute so strictly as to defeat the hospitals' liens where plaintiffs had actual notice of the liens and, thus, were not prejudiced by an untimely filing. In such cases the purpose of the recording statute is served. We affirm the grant of summary judgment in favor of the hospitals on this issue.

## VI. RESTITUTION AND VOLUNTARY PAYMENTS

¶ 40 The hospitals argue that Weirick's and Smith's claims for conversion and unjust enrichment are barred by the voluntary payment rule. The trial court did not address this issue because it found the liens were enforceable and, therefore, found there was no conversion or unjust enrichment. Because we, likewise, hold that the liens were valid and enforceable we need not address this issue.

## VII. ATTORNEYS' FEES ON APPEAL

¶ 41 Plaintiffs request attorneys' fees on appeal pursuant to A.R.S. §§ 12–341.01, 33–934, and 33–936. Plaintiffs' claims against the hospitals are based on statutory medical liens and do not arise out of contract. Therefore, plaintiffs are not entitled to attorneys' fees under A.R.S. § 12–341.01(A). Section 33–934 authorizes attorneys' fees only for lien claimants who successfully enforce medical liens; A.R.S. § 33–936 does not authorize an award of attorneys' fees at all. Accordingly, plaintiffs have no basis for an award of fees and we deny the request. The hospitals did not request fees.

## CONCLUSION

¶ 42 We affirm the judgment in favor of the hospitals. We deny plaintiffs' request for attorneys' fees on appeal.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and EDWARD C. VOSS, Judge.