In Re: William L. CALDERON, and Ahna Rebecca Calderon, Debtors,

Samuel K. Crocker, Trustee, Plaintiff,

v.

William L. Calderon, Ahna Rebecca Calderon, William C. Barnes, Jr., and Blue Cross/Blue Shield, Defendants.

Bankruptcy No. 100–08048.
Adversary No. 101–1513A.

United States Bankruptcy Court, M.D. Tennessee.

Feb. 18, 2003.

Samuel K. Crocker, Nashville, TN, for Samuel K. Crocker, Trustee.

Bruce C. Bailey, Chattanooga, TN, for Blue Cross/Blue Shield.

## MEMORANDUM OPINION

MARIAN F. HARRISON, Bankruptcy Judge.

This matter was heard upon cross motions for summary judgment filed by the Trustee and by Blue Cross/Blue Shield of Tennessee (hereinafter "Blue Cross").[1] Having reviewed the pleadings and considered the arguments of counsel, the Court finds that summary judgment should be granted to the Trustee.

### I.  BACKGROUND

At the time of the filing of this bankruptcy case, the debtor, William Calderon, was the plaintiff in a personal injury action pending in the Circuit Court for Coffee County, Tennessee.  However, when the Calderons filed for bankruptcy on Septem-

---

1.  On May 29, 2002, a compromise and settlement with the other defendants was approved.

ber 11, 2000, they did not list the lawsuit in their Statements and Schedules as required. Because the Trustee was not informed of the lawsuit or of the settlement, he filed a "No Asset Report" on October 12, 2000.

Without the Trustee's knowledge of the lawsuit, Mr. Calderon settled the lawsuit post-petition for $60,000.[2] From the settlement proceeds, Mr. Calderon received a sum of $26,763.27, his attorney, William C. Barnes, Jr., received $15,000, and Blue Cross received $17,000. The balance of the proceeds were used to settle the small expenses of litigation and medical claims.

When the Trustee was informed by a creditor that the debtor had settled a lawsuit and received significant proceeds, he filed a motion to withdraw his "No Asset Report" on February 23, 2001, which was granted by Order on March 1, 2001.

According to the undisputed facts, Mr. Calderon incurred medical bills totaling $43,068.29 due to the injuries stemming from his accident. Blue Cross paid $21,193.45 under its group insurance coverage, leaving the debtor with $21,874.84 in medical expenses. The insurance contract between the debtor and Blue Cross included the following provision:

> The Group has agreed that the Plan shall be subrogated to and/or have the right to recover amounts paid to provide Covered Services to Group Members for illnesses or injuries caused by third parties, including the right to recover the reasonable value of prepaid services rendered by Participating Providers.
>
> The Plan shall have first lien against any payment, judgment or settlement of any kind that a member receives from or on behalf of such third parties for medical expenses, for the costs of Covered Services and any costs of recovering such amounts from those third parties. The Plan may notify those parties of its lien without notice to or consent from those Members.
>
> The Plan may enforce its rights of subrogation and recovery against, without limitation, any tort feasors, other responsible third parties or against available insurance coverages, including underinsured or uninsured motorist coverages. Such actions may be based in tort, contract or other cause of action to the fullest extent permitted by law.
>
> The Group has agreed that Members shall be required to promptly notify the Plan if they are involved in an incident that gives rise to such rights for subrogation and recovery to enable the Plan to protect its rights under this section. Members are also required to cooperate with the Plan and to execute any documents that the Plan deems necessary to protect its rights under this section. If a Member settles any claim or action against any third party, that Member shall be deemed to have been made whole by the settlement and the Plan shall be entitled to immediately collect the present value of its rights as the first priority claim from the settlement fund. Any such proceeds of settlement or judgment shall be held in trust by the Member for the benefit of the Plan. The Plan shall also be entitled to recover reasonable attorneys' fees incurred in collecting proceeds held by the Member in such circumstances.

## II. ARGUMENTS

Blue Cross asserts that because its contract with the debtor provides that it will

---

**2.** The Settlement and Disbursement Statement was filed in state court on February 2, 2001.

be subrogated to any claims the debtor insured may have against a third party tortfeasor for medical expenses paid by Blue Cross, neither the debtor nor the debtor's estate had any interest in that portion of the settlement proceeds attributable to the medical bills paid by Blue Cross. More specifically, Blue Cross asserts that the insurance agreement between it and the debtor conveyed the claim from the debtor to Blue Cross to the extent of the payments made on the policy. Accordingly, Blue Cross submits that the debtor, and in turn, the Trustee, did not have a right or interest in Blue Cross' share of the settlement proceeds, which constitute repayment of medical bills, and thus, such proceeds did not become part of the bankruptcy estate. Even if there was not a transfer of the claim, Blue Cross contends that the debtor only had legal title, and under 11 U.S.C. § 541(d), Blue Cross' equitable interest is excluded from the bankruptcy estate.

In opposition, the Trustee submits that he is entitled to summary judgment because under Tennessee law, the insurance agreement was not an assignment or conveyance of part of his claim against the tortfeasor, nor did Blue Cross have an interest in the personal injury action, whether legal or equitable, at the time the bankruptcy petition was filed. Rather, under Tennessee law, the subrogation agreement created only a future right to reimbursement upon the debtor being made whole which event occurred, if at all, only post-petition. Accordingly, the Trustee submits that Blue Cross should be paid only a pro rata portion of the estate like all other unsecured creditors. Finally, the Trustee contends that Blue Cross' post-petition attachment of an equitable interest in the settlement, which was property of the estate, is avoidable under 11 U.S.C. § 549.

## III. *SUMMARY JUDGMENT STANDARD*

Federal Rule of Civil Procedure 56(c), as incorporated by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On a motion for summary judgment, the evidence, all facts, and any reasonable inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). To prevail, the nonmoving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The Court finds that, according to these standards, no material facts remain in dispute, and the Court will, therefore, determine whether any party is entitled to judgment as a matter of law.

## IV. *SUBROGATION*

While several arguments have been presented, the Court finds that the question is reduced to whether or not Blue Cross had a subrogation interest or right to subrogation at the time of the bankruptcy filing. The answer to this question determines whether the settlement funds are part of the bankruptcy estate.

Pursuant to 11 U.S.C. § 541(a)(1), property of the estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." This section is intentionally broad in scope. *United States v. Cardall*, 885 F.2d 656, 678 (10th

Cir.1989); *Brainum v. Shore Air Conditioning & Refrigeration, Inc. (In re Shore Air Conditioning & Refrigeration, Inc.),* 18 B.R. 643, 646 (Bankr.D.N.J.1982) (clear wording and intent of drafters demonstrates that scope of § 541(a) is very broad and encompasses all interests of debtor as of date its petition is filed). Property of the estate includes pre-petition causes of action for personal injuries even if a judgment or settlement is not reached until after the commencement of the bankruptcy case. *Wischan v. Adler (In re Wischan),* 77 F.3d 875, 877 (5th Cir.1996). *See also Tignor v. Parkinson,* 729 F.2d 977, 981 (4th Cir.1984) ("debtor's claims for injuries to the person, whether unliquidated as when the petition was filed, or settled as occurred during the proceeding, are thus property of the bankrupt estate as of the commencement of the case"); *Sierra Switchboard Co. v. Westinghouse Elec. Corp.,* 789 F.2d 705, 709 (9th Cir. 1986) ("regardless of whether a personal injury claim is transferable or assignable under state law, such claims become part of the bankruptcy estate under Section 541.").

▇▇▇ What constitutes property of the estate is determined generally by state law. *Oakland Gin. Co., Inc. v. Marlow (In re The Julien Co.),* 44 F.3d 426, 429 (6th Cir.1995), *White v. White (In re White),* 851 F.2d 170, 173 (6th Cir.1988). In particular, courts look to state law to determine whether property is part of the bankruptcy estate in the context of an insurer's right to subrogation in a personal injury settlement when the insured has filed for bankruptcy. *In re Squyres,* 172 B.R. 592, 594 (Bankr.C.D.Ill.1994). "As [subrogation] clauses are enforceable against the insured outside the realm of bankruptcy, such clauses should be enforced against debtors and bankruptcy trustees as well." *Id.* at 594–95 (relying on *In re Yakel,* 97 B.R. 580 (D.Ariz.1989)

and *In re U.S. Lines, Inc.,* 79 B.R. 542 (Bankr.S.D.N.Y.1987)); *see also Ginley v. Blue Cross and Blue Shield of Ohio (In re DuBose),* 174 B.R. 260, 262 (Bankr. N.D.Ohio 1994) (insurer's receipt of post-petition payment from settled pre-petition personal injury lawsuit was not property of the estate or an improper post-petition transfer because under Ohio law, insurer was subrogated after its payment of medical expenses in that exact amount).

▇▇▇ Under Tennessee law, the right of subrogation does not arise until the insured has been made whole. Specifically, the insured must be fully compensated for his or her damages before the insurer's subrogation rights arise. *Wimberly v. American Casualty Co. of Reading, Pennsylvania (CNA) Group,* 584 S.W.2d 200, 203 (Tenn.1979). *See also Eastwood v. Glens Falls Ins. Co.,* 646 S.W.2d 156, 157 (Tenn.1983). In *Wimberly,* the insured's recovery from the tortfeasor was less than the casualty loss, and thus, the court held that the insurer's right to subrogation did not arise. 584 S.W.2d at 203. In particular, if an insured has not been made whole, there is no equitable basis for allowing subrogation because there is no risk that the insured may recover twice for the same loss. Moreover, the potential loss incurred by the insurer is a risk the insurer was paid to assume. *Blankenship v. Bain,* 5 S.W.3d 647, 651 (Tenn.1999).

▇▇▇ This "make whole" doctrine has been applied by Tennessee Courts, regardless of what language is contained in an insurance contract regarding subrogation or reimbursement. Under Tennessee law, subrogation in the insurance context is governed by common law equitable principles which cannot be modified by contract, and the requirement that a claimant be made whole cannot be avoided by contract language. *York v. Sevier County Ambulance Auth.,* 8 S.W.3d 616, 621 (Tenn. 1999).

Here, it is undisputed that on September 11, 2000, the day the bankruptcy petition was filed by the debtor, the debtor owned his cause of action for personal injury, and that the cause of action was that date transferred to the Trustee. It is also undisputed that the debtor had not been made whole at that time. Had the case taken its proper course, the Trustee would have pursued the personal injury suit and made the appropriate decisions as to prosecution and settlement. Instead, unbeknownst to the Trustee, the lawsuit of which the Trustee had no knowledge was settled and the proceeds divided between the debtor, his attorney, and Blue Cross.

The law in Tennessee appears clear. Unless and until the insured is made whole, i.e. the whole debt is paid, there exists no right of subrogation. *Marshall v. Employers Health Ins. Co.*, 927 F.Supp. 1068, 1072 (M.D.Tenn.1996). " 'As a subrogee, the insurer does not acquire the rights of its insured until the latter is made whole.' " *Id.* (quoting *Wimberly v. American Cas. Co.*, 584 S.W.2d 200, 203).

At the commencement of this bankruptcy case, the debtor, and therefore the Trustee, held the legal and equitable interests in the personal injury lawsuit because Blue Cross' subrogation rights had not yet arisen under Tennessee law. Accordingly, the settlement proceeds from the lawsuit are part of the debtor's estate and should be turned over immediately to the Trustee.

This holding is consistent with the rulings of other bankruptcy courts applying similar state laws where recovery on a pre-petition lawsuit was made post-petition. In *Nazar v. Allstate Ins. Co. (In re Veazey)*, 272 B.R. 486 (Bankr.D. Kansas 2002), the court considered whether a subrogation interest accrued pre- or post-petition under Kansas law. In reviewing the Kansas statute on subrogation, the court held that an insurer's interest does not attach or become perfected until after recovery is made from the tortfeasor. *Id.* at 494. Similarly, in *In re Faita*, 164 B.R. 6 (Bankr.D.Conn.1994), the court found that under the Connecticut subrogation statute, the lien it conferred only attached when the insured received the recovery. *Id.* at 10–11.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that there is no genuine issue of fact and that the Trustee is entitled to judgment as a matter of law pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Likewise, the Court finds that Blue Cross' motion for summary judgment should be denied.

An appropriate order will enter.