**In re Gary L. CUPP, Debtor.**

**No. 01–35920.**

United States Bankruptcy Court, E.D. Tennessee.

Feb. 28, 2008.

Jenkins & Jenkins Attys., PLLC, Jason E. Fisher, Ryan E. Jarrard, Knoxville, TN, for State Farm Mutual Automobile Insurance Company.

Mostoller Stulberg & Whitfield, Ann Mostoller, Oak Ridge, TN, Chapter 7 Trustee.

## MEMORANDUM ON OBJECTION TO TRUSTEE'S FINAL REPORT AND ON MOTION FOR DETERMINATION THAT CERTAIN PROPERTY IS NOT PROPERTY OF THE ESTATE

RICHARD STAIR, JR., Bankruptcy Judge.

This contested matter is before the court on the Objection to Trustee's Pro-

posed Final Report (Objection to Final Report) and Motion for Determination That Certain Property is Not Property of the Estate (Motion for Determination) filed by State Farm Mutual Automobile Insurance Company (State Farm) on October 19, 2007. By both, State Farm objects to the Chapter 7 Trustee's proposed distribution of funds and seeks a determination that $10,000.00 of the proceeds realized by the Trustee from the postpetition settlement of a personal injury lawsuit is subject to State Farm's subrogation rights and is not property of the estate available for distribution.

Pursuant to the scheduling Order entered on November 20, 2007, an evidentiary hearing was scheduled for February 11, 2008, and dates were fixed for filing stipulations and briefs. The parties filed Stipulations on January 4, 2008, setting forth certain undisputed facts and stipulating to the authenticity and admissibility of nine (9) exhibits.[1] The parties also notified the court that the evidentiary hearing would not be necessary. As directed, State Farm timely filed its brief on January 17, 2008, and the Trustee filed her brief on February 4, 2008.[2]

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A) and (O) (2005).

I

On May 28, 2001, prior to the filing of his Voluntary Petition under Chapter 7 on December 3, 2001, the Debtor was involved in a traffic accident with Ruth Foster, sustaining minor injuries. See Ex. 8. Under the terms of the medical payments coverage provision of the Debtor's automobile insurance policy, State Farm paid the Debtor's prepetition and postpetition medical bills totaling $10,000.00, as follows: (1) $434.66 as evidenced by a letter dated January 4, 2002; (2) $1,870.00 as evidenced by a letter dated February 26, 2002; (3) $169.00 as evidenced by a letter dated April 23, 2002; and (4) $7,526.34 as evidenced by a letter dated August 28, 2002. See Ex. 1; Ex. 2; Ex. 3; Ex. 4. Each of these letters states that "[p]ayments made may be subject to the company's right of subrogation and/or reimbursement." Ex. 1; Ex. 2; Ex. 3; Ex. 4. Additionally, on August 28, 2002, State Farm sent a letter to the Debtor stating that it had "made payments under the Medical Payments coverage of [the Debtor's] policy and the maximum limit of benefits have now been exhausted." Ex. 5. The Debtor filed a personal injury lawsuit against Ms. Foster in the Circuit Court for Anderson County, Tennessee, to recover damages attributable to the accident.[3]

On January 11, 2005, the Trustee filed a Motion to Approve Compromise and Notice of Hearing (Motion to Compromise), asking the court to approve a proposed settlement of the Anderson County personal injury lawsuit, under the terms of which the Defendant, Ms. Foster, agreed to pay $30,000.00 to the Trustee. Ex. 8. From this $30,000.00, the Debtor was to receive $10,000.00, representing his

---

1. The court also takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of material undisputed facts of record in the Debtor's bankruptcy case file.

2. Pursuant to the November 20, 2007 scheduling Order, State Farm's brief was due within 14 days after the Stipulations were filed and the Trustee's brief was due 2 weeks thereafter, by January 31, 2008. Because the Trustee's brief was untimely, the court has not considered it in the resolution of this matter.

3. The parties did not stipulate the date the lawsuit was filed. However, in the Motion for Determination, State Farm avers that the action was filed postpetition in "May of 2002" and this date does not appear to be disputed by the Trustee.

claimed statutory exemptions in the amount of $7,500.00 for personal injury and $2,500.00 for loss of future wages, and the Trustee's attorney, Billy Sams, was to receive $10,894.21, representing his one-third contingency fee of $10,000.00 plus $894.21 in expenses. Ex. 8. By Order entered on February 4, 2005, the court granted the Motion to Compromise and approved the settlement. Ex. 6.

On September 29, 2007, the Trustee filed the Trustee's Final Report, evidencing receipts during her administration of the bankruptcy estate totaling $30,169.21 and disbursements of $20,923.52, leaving $9,245.69 available for payment of unpaid administrative expenses and a dividend to unsecured creditors.[4]

Pursuant to the November 20, 2007 Order, the issue before the court is as follows:

[W]hether State Farm Mutual Automobile Insurance Company has a subrogation interest to the extent of $10,000.00 in the $30,000.00 realized by the Trustee from the settlement of a personal injury lawsuit in which the Debtor was the plaintiff and, if so, whether the $10,000.00 is the property of State Farm Mutual Automobile Insurance Company rather than property of the estate.[5]

## II

State Farm contends that because it paid $10,000.00 in medical expenses for the Debtor under the terms of his insurance policy, it has an interest superior to that of the Trustee in $10,000.00 of the settlement proceeds received from the settlement

with Ms. Foster and that such proceeds are not property of the Debtor's bankruptcy estate. In support of this contention, State Farm relies upon the following provisions of the automobile insurance policy:

3. Our Right to Recover Our Payments

. . . .

b. Under medical payments coverage:

(1) we are subrogated to the extent of our payments to the right of recovery the injured *person* has against any party liable for the *bodily injury*.

(2) if the *person* to or for whom we have made payment has not recovered from any party liable for the *bodily injury,* he or she shall:

(a) not hurt our rights to recover;

(b) keep these rights in trust for us;

(c) execute any legal papers we need; and

(d) when we ask, take action through our representative to recover our payments.

(3) if the *person* to or for whom we make payments recovers from any party liable for the *bodily injury,* that *person* shall hold in trust for us the proceeds of the recovery, and reimburse us to the extent of our payment.

Ex. 9.

 The commencement of a bankruptcy case "creates an estate," consisting of "all legal or equitable interests of the debtor in property as of the commencement of the estate." 11 U.S.C. § 541(a) (2005). Congress intended for the scope of

---

4. The funds received by the Trustee are attributable entirely to the $30,000.00 realized from the *settlement of the Anderson County* personal injury lawsuit together with $169.21 in interest earned on those funds. The disbursements consist of $10,894.21 in attorney's fees and expenses paid to the Trustee's attorney, $10,000.00 paid to the Debtor in

satisfaction of his statutory exemptions, and $29.31 paid by the Trustee on her bond premium.

5. As noted, the Trustee has already disbursed $20,923.52 of the settlement proceeds and only has available $9,245.69.

§ 541 to be broad, *see United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983), but the legal or equitable interests of a debtor's bankruptcy estate cannot rise above that of the debtor pre-petition. *La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.),* 832 F.2d 1391, 1399 (5th Cir.1987).

■ Personal injury claims arising from a pre-petition automobile accident fall within the broad parameters of a debtor's bankruptcy estate, even when unliquidated at the time the petition was filed. *See In re Colombo,* 325 B.R. 587, 594 (Bankr. N.D.Iowa 2005); *In re Bippert,* 311 B.R. 456, 466 (Bankr.W.D.Tex.2004); *In re Robinson,* 292 B.R. 599, 606 (Bankr.S.D.Ohio 2003). "[T]he fact that … causes of action may have borne fruit in settlement or judgment after commencement of the bankruptcy case does not transform them into post-petition property of the debtor—excluded from the bankruptcy estate[.]" *In re Ballard,* 238 B.R. 610, 624 (Bankr. M.D.La.1999) (quoting *Wischan v. Adler (In re Wischan),* 77 F.3d 875, 877 (5th Cir.1996)).

■ "[C]ourts look to state law to determine whether property is part of the bankruptcy estate in the context of an insurer's right to subrogation in a personal injury settlement where the insured has filed for bankruptcy." *Crocker v. Calderon (In re Calderon),* 363 B.R. 537, 541 (Bankr.M.D.Tenn.2003) (citation omitted). Moreover, in the Sixth Circuit, "[t]he subrogation rights conferred by contract are not affected by the Bankruptcy Code or the bankruptcy proceedings of the insured," and if "the insurance company had a contractual right to subrogation before its insured filed bankruptcy, the Trustee could not properly acquire it for the benefit of the general creditors." *French v.*

*Frey (In re Bergman),* 467 F.3d 536, 538–39 (6th Cir.2006).

■ As applied in Tennessee, "[s]ubrogation is an equitable doctrine that facilitates the adjustment of rights to avoid unjust enrichment in many types of situations by substituting one person or entity in place of another in regard to some claim or right that the second person or entity may have against a third party." *Waller v. Ammon,* No. 01A01–9606–CV–00260, 1998 Tenn.App. LEXIS 394, at *6–7, 1998 WL 321569, at *3 (Tenn.Ct.App. June 19, 1998).

> A right of subrogation may arise by contract ("conventional subrogation"), by application of equitable principles of law ("legal subrogation"), or by application of a statute ("statutory subrogation"). It is based on two fundamental premises: 1) that an insured should not be permitted recovery twice for the same loss, which would be the potential result if the insured recovers from both its insurer and a tort-feasor; and 2) that the tort-feasor should compensate the insurer for payments the insurer made to the insured.

*Blankenship v. Estate of Bain,* 5 S.W.3d 647, 650 (Tenn.1999). Stated another way, "[t]he purpose of insurance subrogation is to prevent either the unjust enrichment of the insured through a double recovery or a windfall benefit to the principal tortfeasor by allowing the insurer to stand in the shoes of the insured once the insurer has fully indemnified the insured." *Wimberly v. Am. Cas. Co.,* 584 S.W.2d 200, 203 (Tenn.1979); *see also Hartman v. State of Tenn.,* No. M2002–01430–COA–R3–CV, 2003 Tenn.App. LEXIS 285, at *21, 2003 WL 1872648, at *7 (Tenn.Ct.App. Apr. 14, 2003) ("The purpose of the subrogation doctrine 'is the prevention of injustice.' ") (quoting 83 C.J.S. *Subrogation* § 3 (2000)); *Amos v. Cent. Coal Co.,* 38 Tenn.App. 626,

277 S.W.2d 457, 462 (1954) (holding that the right to subrogation "accrues when one person for the protection of his own interests, pays a debt for which another is primarily liable.").

 The rights asserted by State Farm in this contested matter arise from an insurance policy held by the Debtor, are contractual in nature, and are, therefore, conventional subrogation rights "not affected by the Bankruptcy Code or the bankruptcy proceedings of the insured." *Bergman*, 467 F.3d at 538. Nevertheless, "regardless of the source of the right of subrogation, the right will only be enforced in favor of a meritorious claim and after a balancing of the equities." *Castleman Constr. Co. v. Pennington*, 222 Tenn. 82, 432 S.W.2d 669, 676 (1968); *see also Lawyers Title Ins. Corp. v. United Am. Bank*, 21 F.Supp.2d 785, 792 (W.D.Tenn.1998).

 In Tennessee, "the right of subrogation does not arise until the insured has been made whole. Specifically, the insured must be fully compensated for his or her damages before the insurer's subrogation rights arise." *Calderon*, 363 B.R. at 541 (citations omitted). "[W]hen the total recovery of the insured from the tortfeasor and the ... insurance polic[y] is less than the casualty loss" the insured has not been made whole. *Wimberly*, 584 S.W.2d at 201. "Whether an insured has been made whole is a matter of fact, upon which the insured has the burden of proof[,]" *Abbott v. Blount County*, 207 S.W.3d 732, 735 (Tenn.2006), and in making a determination as to whether an insured has been "made whole," payments made to the insured or on the insured's behalf by the insurance company as well as the payments made to the insured by or on behalf of the party at fault should be considered. *Waller*, 1998 Tenn.App. LEXIS 394, at *9, 1998 WL 321569, at *4. Furthermore, the "made whole" doctrine must be applied irrespective of the subrogation language in the contract. *Abbott*, 207 S.W.3d at 735.

 Here, the automobile accident occurred on May 28, 2001, and the Debtor filed his bankruptcy case on December 3, 2001, just over six months later. It is undisputed that the cause of action stemming from the prepetition accident was property of the bankruptcy estate and that the estate was entitled to any proceeds realized through the lawsuit filed by the Debtor against the tortfeasor subject to State Farm's subrogation rights. The record also reflects that the payments made by State Farm on the Debtor's behalf occurred postpetition, beginning January 4, 2002, and totaled $10,000.00. The Trustee's compromise of the personal injury action was approved by the court on February 4, 2005, under the terms of which the Trustee received $30,000.00, a sum substantially in excess of the third-party medical claims paid by State Farm on behalf of the Debtor.

Under Tennessee law, State Farm held a vested subrogation interest in $10,000.00 of the $30,000.00 received by the Trustee from her settlement of the personal injury claim. Because the Debtor, vis-a-vis the Trustee, has been made whole, *i.e.*, the full extent of the casualty loss has been recovered by the Trustee, State Farm is entitled to its $10,000.00 subrogation claim in the settlement proceeds. As such, this sum is not property of the bankruptcy estate. To hold otherwise would allow that which the equitable doctrine of subrogation is designed to prohibit, as it would allow recovery of the Debtor's medical expenses twice—from the tortfeasor upon payment of the $30,000.00 settlement proceeds, and from State Farm who paid $10,000.00 directly to the Debtor's medical providers.

For the above reasons, State Farm's Objection to Final Report will be sustained and its Motion for Determination will be granted. Because the Trustee does not have $10,000.00 to turn over to State Farm, she will be required to turn over the $9,245.69 on deposit in her estate account.

An order consistent with this Memorandum will be entered.