**In re Janis Kay BURNETT, Debtor.**

**L. Win Holbrook, Trustee, Plaintiff,**

**v.**

**Country Mutual Insurance Co.; Blue Cross Blue Shield of Oklahoma; Daniel J. Post, M.D.; Deaconess Hospital; Oklahoma Spine Hospital, L.L.C. d/b/a OK Spine Hospital; Interventional Pain Management I.P.A. of Oklahoma Inc. d/b/a OK Interventional Pain Management; Matthew Stanfield, M.D.; Robert Remondino, M.D., Defendant.**

Bankruptcy No. 07–10780–SAH.
Adversary No. 10–1007–SAH.

United States Bankruptcy Court,
W.D. Oklahoma.

Jan. 31, 2011.

---

David Pomeroy, Andrews Davis, A.P.C., Oklahoma City, OK, for Plaintiff.

L. Win Holbrook, Andrews Davis, Oklahoma City, OK, pro se.

Jesse L. Sumner, Sumner Law Office, Roni S. Rierson, Tulsa, OK, William A. Gosney, West & Associates, Raymond A. Vincent, Pool Blankenship & Vincent, Devan A. Pederson, Elliott & Pederson, G. Rudy Hiersche, Jr., Oklahoma City, OK, for Defendant.

### *MEMORANDUM OF DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

SARAH A. HALL, Bankruptcy Judge.

Trustee brought his complaint seeking a declaratory judgment in his favor that he is entitled to possession, to the exclusion of the defendants, of a fund created by a court-approved settlement arising under an uninsured motorist insurance policy is-

sued by defendant Country Mutual Insurance Company ("Country Mutual"). The other remaining defendants (excepting only Daniel J. Post, M.D.) are medical lienholders that provided Debtor (identified below) with medical services after Debtor filed her Chapter 7 petition and a health insurer that paid benefits on behalf of Debtor. Trustee filed his Motion for Summary Judgment ("Motion") (Doc. 26). Defendants Oklahoma Spine Hospital, L.L.C. ("OSH"), Interventional Pain Management ("IPM"), and Robert Remondino ("Remondino") filed their joint response to the Motion and counter-motion for summary judgment (Doc. 44). Defendant Blue Cross Blue Shield of Oklahoma ("BCBS") filed its response to the Motion (Doc. 45), and Daniel J. Post, M.D., ("Post") filed his response to the Motion (Doc. 41).[1]

For the reasons set forth below, the Court grants Trustee's Motion and denies OSH, IPM and Remondino's counter-motion.

### Background

The following relevant facts are not in dispute:

1. Debtor Janis Kay Burnett ("Debtor") was involved in an automobile accident on or around March 3, 2006 (the "Accident"). (*See* Motion, p. 2, ¶ 1; Joint Response, p. 2, ¶ 1; BCBS Response, p. 1, ¶ 1.)

2. At the time of the accident, Debtor claimed uninsured motorist coverage under a policy of insurance issued by Country Mutual. (*See* Motion, p. 2, ¶ 1; Joint Response, p. 2, ¶ 1; BCBS Response, p. 1, ¶ 1.)

3. Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code on March 16, 2007 (the "Petition Date"). (*See* Motion, p. 3, ¶ 4; Joint Response, p. 3, ¶ 2; BCBS Response, p. 2, ¶ 4.)

4. Debtor became an insured under a BCBS insurance plan on December 15, 2007. *See* Answer to Complaint, filed February 11, 2010, p. 3, ¶ 10.[2]

5. On March 2, 2009, Debtor filed a petition with the District Court for Oklahoma County against Country Mutual, Case No. CJ–2009–1966 (the "District Court Action"). (*See* Motion, p. 2, ¶ 1; Joint Response, p. 2, ¶ 1; BCBS Response, p. 1, ¶ 1.)

6. Trustee was substituted as party plaintiff in the District Court Action. (*See* Motion, p. 3, ¶ 5; Joint Response, p. 2, ¶ 1; BCBS Response, p. 2, ¶ 5.)

7. This Court approved a settlement of the District Court Action on December 7, 2009. (*See* Order Sustaining Trustee's Motion to Compr. Controversy, Case No. 07–10780, Doc. 42.)

8. Defendant Post provided medical services to Debtor related to the injuries she sustained in the Accident and filed a

---

1. Trustee's Motion for Summary Judgment will be referred to as the "Motion"; Defendants Oklahoma Spine Hospital L.L.C., Interventional Pain Management, and Robert Remondino's Motion for Summary Judgment and Counter–Motion for Summary Judgment and Brief in Support will be referred to as "Joint Response"; defendant Blue Cross Blue Shield of Oklahoma's Response to Trustee's Motion for Summary Judgment will be referred to as "BCBS Response"; and defendant Daniel J. Post, M.D.'s Response and Announcement to Trustee's Motion for Summary Judgment will be referred to as the "Post Response."

2. Generally, factual assertions admitted by a party in an answer are judicial admissions which are conclusively binding upon the party who made them. *Broadway Advisors, LLC v. Hipro Elec., Inc. (In re Gruppo Antico, Inc.),* 359 B.R. 578, 587 (Bankr.D.Del.2007) (citing *Liebersohn v. IRS (In re C.F. Foods, L.P.),* 265 B.R. 71, 87 (Bankr.E.D.Pa.2001)).

lien with respect thereto on March 7, 2007, a date prior to the Petition Date. (*See* Motion, p. 2, ¶ 2.)

9. Defendants OSH, IPM and Remondino, on a post-petition basis, provided medical services to Debtor related to the injuries she sustained in the Accident and also filed liens with respect thereto. (*See* Motion, Ex. 2; Joint Response, p. 3, ¶ 3.)

10. Defendant BCBS paid benefits for medical services provided post-petition to Debtor related to the injuries she sustained in the Accident. (*See* BCBS Response, p. 2, ¶ 2; Ex. A.)

11. The undisputed language of the BCBS plan specifically provides that each subscriber, *i.e.* Debtor, "shall reimburse [BCBS] on a first-priority basis regardless of whether a suit is actually filed or not and, if settled, regardless of how the settlement is structured or how items of damages are included in the settlement, and regardless of whether or not he or she is made whole or is fully compensated for any injuries." (*See* BCBS Response, Ex. A, p. 5.)

12. The BCBS Plan further provides that Debtor is to hold in trust for BCBS any money recovered up to the amount of benefits paid by BCBS. (*See* BCBS Response, Exhibit A, p. 5.)

13. Neither Trustee nor OSH, IPM or Remondino provided the Court with evidence of the existence of any contractual provisions addressing OSH, IPM or Remondino's rights to reimbursement from

and/or subrogation to the rights of Debtor in any settlement recovery arising from the Accident.

### Summary Judgment standard

Rule 56(c)(2) of the Federal Rules of Civil Procedure, applicable to this proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment is proper and should be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with any supporting affidavits, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). To prevail, the moving party must show sufficient evidence to create a genuine issue of material fact. *Id.* Based on these standards, the Court finds that there is no genuine issue as to any material fact, and Trustee is entitled to judgment as a matter of law.

### Analysis

■ 1. With respect to defendants OSH, IPM, Remondino and BCBS,[3] Trustee is seeking judgment that the Settlement Proceeds are property of the estate free and clear of any lien and claim of OSH, IPM, Remondino and BCBS. Specifically, Trustee seeks to avoid certain "transfers" of property of the estate made after the Petition Date in the form of liens filed of record by defendants OSH, IPM, and Remondino in accordance with Okla. Stat. Ann. tit. 42, § 46 (Supp.2011),[4] and

**3.** Defendant Country Mutual refuses to release the settlement proceeds ("Settlement Proceeds") due to the medical liens of record. (*See* Complaint, filed on January 13, 2010.) Default judgments have been taken against defendants Deaconess Hospital and Matthew Stanfield, M.D. A settlement has been reached between defendant Post and Trustee which, as per defendant Post, will be finalized if and

when this adversary proceeding is resolved as to all other parties. (*See* Post's Response.)

**4.** Trustee in his Complaint seeks a declaratory judgment determining that the named defendants have no valid claim to the Settlement Proceeds and directing Country Mutual to pay the Settlement Proceeds to Trustee. (*See* Complaint, p. 2.) In the Motion, Trustee takes a slightly different approach, seeking to avoid

claims made by BCBS under a BCBS insurance plan that arise from post-petition medical services provided to Debtor.

### Applicable State Law—Physician's Lien

2. The liens asserted by defendants OSH, IPM, and Remondino in and to the Settlement Proceeds arise by virtue of Oklahoma law, specifically Okla. Stat. Ann. tit. 42, § 46 (Supp.2011), and are commonly referred to a "physician's liens." Section 46 provides in pertinent part:

A. Every physician who performs medical services or any other professional who engages in the healing arts ... for any person injured as a result of the negligence or act of another, shall, if the injured person asserts or maintains a claim against such other person for damages on account of such injuries, have a lien for the amount due for such medical or healing arts services upon that part going or belonging to the injured person of any recovery or sum had or collected or to be collected by the injured person, ... whether by judgment, settlement, or compromise. Such lien shall be inferior to any lien or claim of any attorney handling the claim for or on behalf of the injured person....

B. In addition to the lien provided for in subsection A of this section, every physician or professional person licensed under Title 59 of the Oklahoma Statutes who performs medical or healing arts within their scope of practice for any person injured as a result of the negligence or act of another, shall have, if the injured person asserts or maintains a claim against an insurer, a lien for the amount due for such medical or healing arts services upon any monies payable by the insurer to the injured person.

C. No lien which is provided for in this section shall be effective, unless, before the payment of any monies to the injured person, the attorney for the injured person, or legal representative has compensation for such injuries or death:

1. A written notice is sent setting forth an itemized statement of the amount claimed, identifying ... is filed on the mechanic's and materialman's lien docket in the office of the county clerk of the county where the principal office of the physician or professional person licensed under Title 59 of the Oklahoma Statutes is located; and

2. The physician or professional person licensed under Title 59 of the Oklahoma Statutes sends ... a copy of such notice with a statement of the date of filing thereof to the person, firm, or corporation against whom the claim is made and to the injured person....

D. The liens provided for in this section may be enforced by civil action in the district court of the county where

---

the liens or claims of the named defendants (excepting defendant Post) and directing Country Mutual to pay the Settlement Proceeds to Trustee. (*See* Motion, p. 4.) All of the parties fully briefed the legal issues respecting the creation, scope, validity and avoidability of the liens and claims in the summary judgment materials. This Court concludes that Trustee is not prevented from pursuing avoidance of the liens and claims pursuant to the Motion because it was not specifically raised in the Complaint as the parties were clearly aware of the avoidance claim, vigorously defended against avoidance in their respective responses and were not prejudiced by its inclusion in the Motion. *See McBeth v. Himes,* 598 F.3d 708, 716 (10th Cir.2010) (a failure to set forth in the complaint a theory upon which the plaintiff could recover does not bar a plaintiff from pursuing a claim in the absence of prejudice to the other parties).

the lien was filed. Such an action shall be brought within one (1) year after the physician or professional person licensed under Title 59 becomes aware of final judgment, settlement or compromise of the claim asserted or maintained by or on behalf of the injured person. . . .

3. The liens asserted by defendants OSH, IPM and Remondino arise under Section 46(B) which grants a lien to a physician against proceeds derived from a patient's claim against an insurer (rather than a tortfeasor). *See Broadway Clinic v. Liberty Mut. Ins. Co.,* 139 P.3d 873, 879 (Okla.2006) (Okla. Stat. Ann. tit. 42, § 46 was subsequently amended to provide for a different date for commencement of the one year period for enforcement of the filed lien).

▪ 4. Section 46 is designed to encourage physicians to provide medical services to individuals who have been injured by another and have insufficient funds or insurance to pay for medical services when they are provided. *See Balfour v. Nelson,* 890 P.2d 916, 919 (Okla.1994). The purpose of Section 46 is designed to ensure that physicians are paid for their services once their patients receive compensation for their injuries from insurance companies. *See id.*

▪ 5. Statutory liens, such as that created by Section 46, stand in derogation of the common law. *See Broadway Clinic,* 139 P.3d at 877 (citing *Republic Bank & Trust Co. v. Bohmar Minerals, Inc.,* 661 P.2d 521, 523 (Okla.1983)). The Oklahoma Supreme Court has repeatedly stated that statutory liens must be strictly confined to the express terms of the statute. *See Broadway Clinic,* 139 P.3d at 877. " 'A

lien that is not provided for by the clear language of the statute cannot be created by judicial fiat.' " *Pratt v. Tower Day Surgery Ctr. (In re Pratt),* 251 B.R. 441 (10th Cir. BAP 2000) (citing *Riffe Petroleum Co. v. Great Nat'l Corp., Inc.,* 614 P.2d 576, 579 (Okla.1980) (lien cannot be created out of a sense of fairness consistent with the underlying policy served by the statute where the statutory requirements for the lien are found to be narrow)). Public policy behind a legislative enactment or notions of fairness do not provide a basis for courts to create or recognize a right where none exists. *See Malloy v. St. John Med. Ctr. (In re Woodward),* 234 B.R. 519, 524 (Bankr.N.D.Okla.1999) (citing *Kratz v. Kratz,* 905 P.2d 753, 756 (Okla.1995) (a lien not created by the clear language of a statute cannot be created by judicial fiat for "the words of the statute are the measure of the right and the remedy.")).

▪ 6. "As a remedial device that owes its existence to a legislative enactment, the text of the physician's lien statute is the measure of both the right and the remedy it creates. A statutory lien must be strictly confined within the ambit of legislation giving it birth. Hence, the funds upon which a physician's lien may be impressed are only those that come within the express terms of the statute." *Broadway Clinic,* 139 P.3d at 877.

7. Okla. Stat. Ann. tit. 42, § 46(C) expressly provides that the physician's lien granted in Sections 46(A) and (B)[5] is "effective" if, before the payment of insurance proceeds to the injured person (or his or her agent) (1) a written notice containing an itemized statement of the amount claimed by the physician and the policy(ies) against which the lien is asserted

---

**5.** In this case, Section 46(B) controls since the settlement is being paid by an insurer rather than the tortfeasor. Section 46(C) ap-

plies to both. *See* Okla. Stat. Ann. tit. 42, § 46(C) (Supp.2011).

and the name and address of the physician, the injured person and the tortfeasor is filed in the mechanic's and materialman's lien docket in the county where the physician is located, and (2) the physician sends by registered or certified mail a copy of the notice with a statement of the date of filing to the tortfeasor and the injured person and to the attorney for the injured person. *See* Okla. Stat. Ann. tit. 42, § 46(C) (Supp.2011) and *Woodward,* 234 B.R. at 523, (recognizing similar requirements under both Okla. Stat. Ann. tit. 42, §§ 44 and 46 and stating that, unless the requirements are satisfied, the lien is of no force and effect).[6] Section 46 requires that, in order for a lien thereunder to be effective, all steps outlined must be completed. *See Pratt,* 251 B.R. 441.

8. A physician's lien filed and served in accordance with Section 46(C) prior to the injured patient receiving any proceeds in settlement of the personal injury claim and prior to the statute of limitations having run on the underlying obligation (i.e. collection on the underlying contract to provide the subject medical services) is valid and enforceable if the physician brings suit within one year after the physician becomes aware of the judgment, settlement or compromise of the claim of the injured person. *See* Okla. Stat. Ann. tit. 42, § 46(C) and (D) (Supp.2011); *Balfour,* 890 P.2d at 919.

### Applicable State Law—Subrogation

■ 9. With regard to subrogation interests, Oklahoma has adopted the "make whole" rule. *See Manokoune v. State Farm Mut. Auto. Ins. Co.,* 145 P.3d 1081, 1086 (Okla.2006). The "make whole" rule provides that if compensation a beneficiary has received from a third party represents less than full compensation for damages suffered, and either the contract giving rise to the subrogation interest does not stipulate that it has priority over any other funds the beneficiary might receive or does not contain an express statement that the injured does not have to be made whole before the insurer is entitled to recoup its payments, the subrogation agreement is unenforceable. *See id.,* 145 P.3d at 1086 (citing *Reeds v. Walker,* 157 P.3d 100 (Okla.2006); *Equity Fire & Cas. Co. v. Youngblood,* 927 P.2d 572, 576–577 (Okla. 1996)).

10. The "make whole" rule is clear— unless the whole debt is paid, there exists no right to subrogation. *See Crocker v. Calderon (In re Calderon),* 363 B.R. 537 (Bankr.M.D.Tenn.2003).

### Applicable Bankruptcy Law

■ 11. Property of the bankruptcy estate consists of all legal or equitable interests of a debtor in property as of the commencement of the case. *See* 11 U.S.C. § 541(a). While reference is made to state law to determine the nature and extent of a debtor's interest in property, Section 541 dictates the extent to which a debtor's interest becomes property of the estate. *See Lovald v. McGreevy (In re McGreevy),* 388 B.R. 917, 920 (Bankr.D.S.D.2008) (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Generally, the bankruptcy estate is defined in time by the date the bankruptcy petition is filed. 11 U.S.C. § 541(a)(1).

■ 12. A debtor's bankruptcy estate includes all causes of action of the debtor, including, without limitation, all claims for personal injury, which could have been brought on the petition date. *See Gavend v. Hill (In re Gavend),* 25 F.3d 1056 (10th Cir.1994); *Wischan v.*

---

**6.** As Trustee does not dispute or question the sufficiency of the written notice filed and served by OSH, IPM and Remondino, the Court presumes that the requirements of Okla. Stat. Ann. tit. 42, § 46(C) (Supp.2011), are satisfied.

*Adler (In re Wischan,)*, 77 F.3d 875, 877 (5th Cir.1996) (a debtor's pre-petition causes of action for personal injuries sustained pre-petition are property of the bankruptcy estate); *McGreevy*, 388 B.R. at 921. Debtor's rights to recover from third parties, including insurance companies, for damages sustained as a result of the Accident, which occurred pre-petition, constitute property of Debtor's bankruptcy estate under Section 541(a). Likewise, the Settlement Proceeds, as proceeds of Debtor's right to recover from defendant Country Mutual for damages sustained and incurred as a result of the Accident, also constitute property of the estate.

▆ 13. However, the estate and, therefore, Trustee, stands in Debtor's shoes and cannot assert interests or rights greater than Debtor possessed on the petition date. *See McGreevy*, 388 B.R at 921 (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–205, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)). Accordingly, if property in the hands of Debtor is limited, it is similarly limited in the hands of the bankruptcy estate. *See McGreevy*, 388 B.R. at 921 (citing *Ramette v. Digital River, Inc. (In re Graphics Tech., Inc.)*, 306 B.R. 630, 634 (8th Cir. BAP 2004)). The question in this case is whether and to what extent Section 46 and applicable subrogation rights encumber the Settlement Proceeds in the hands of Debtor and, therefore, Trustee.

14. Consistent with the date limitation on the contents of the bankruptcy estate, Trustee has rights to avoid certain transfers of interests in property of the estate (or that would have been property of the estate but for the transfer) that occurred prior to the Petition Date (such as 11 U.S.C. § 544) and certain transfers that occurred after the Petition Date (such as 11 U.S.C. § 549).

15. 11 U.S.C. § 549(a) provides that a trustee may avoid a transfer of property of the estate that occurs after the commencement of the case that is not authorized under the Bankruptcy Code or by the court. *See Woodward*, 234 B.R. at 525 (Section 549(a) makes exceptions under Sections 303(f) and 542, neither of which are applicable in this case).

16. An exception exists to the avoidability of post-petition transfers of bankruptcy estate property occurring when security interests are perfected on a post-petition basis pursuant to 11 U.S.C. § 546(b). Section 546(b) provides:

(b)(1) The rights and powers of a trustee under sections 544, **545, and 549 of this title are subject to any generally applicable law that—**

**(A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or**

(B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

(2) If—

(A) a law described in paragraph (1) requires seizure of such property or commencement of an action to accomplish such perfection, or maintenance or continuation of perfection of an interest in property; and

(B) such property has not been seized or such an action has not been commenced before the date of the filing of the petition.

11 U.S.C. § 546(b) is recognized as creating an exception to the general rule that post-petition perfection of statutory liens and security interests on estate property

can be avoided under Section 549. *See Woodward,* 234 B.R. at 526.

17. The exception contained in Section 546(b) has been limited to post-petition perfection of statutory liens and security interests which relates back to a pre-petition event and defeats the right of an intervening creditor. *See Woodward,* 234 B.R. at 527 (citing *In re Houts,* 23 B.R. 705, 706–707 (Bankr.W.D.Mo.1982)). 11 U.S.C. §§ 362(b)(3) and 546(b) allow post-petition perfection of liens and interests in property of the debtor or the estate if applicable non-bankruptcy law provides for the perfected lien to be effective against previously acquired interests in such property. *See Nazar v. Allstate Ins. Co. (In re Veazey),* 272 B.R. 486, 495 (Bankr.D.Kan.2002).

18. Even if the post-petition filing of the physician's lien notices by OSH, IPM and Remondino can be avoided, Trustee's right to the Settlement Proceeds may still be subject to a limiting interest in the form of subrogation rights. *See McGreevy,* 388 B.R. at 921. Bankruptcy courts look to state law to determine whether property is included in the bankruptcy estate in the context of an insurer's right to subrogation on a personal injury settlement when the insured files a bankruptcy petition. *See Calderon,* 363 B.R. at 541 (citing *In re Squyres,* 172 B.R. 592, 594 (Bankr.C.D.Ill.1994)).

### Application

19. The difficulty facing the Court in this case is reconciling the rights and obligations created by the physician's lien statute and contractual subrogation rights, with the Bankruptcy Code, specifically the bankruptcy estate and payment and priority of claims against Debtor and her bankruptcy estate. A different analysis, albeit the same result, is required depending upon the respective claimants.

### OSH, IPM and Remondino

20. OSH, IPM and Remondino claim an interest in and/or lien on the Settlement Proceeds pursuant to Okla. Stat. Ann. tit. 42, § 46 (Supp.2011).

21. The specific language of the physician's lien statute limits the lien for the amount due for medical services to "any monies payable by the insurer to the injured person." Okla. Stat. Ann. tit. 42, § 46(B) (Supp.2011). The limitation of the lien to monies payable is reiterated by Section 46(C), which provides that the lien shall be "effective", when notice of the lien is filed and served "before the payment of any monies to the injured person". Okla. Stat. Ann. tit. 42, § 46(C) (Supp.2011).

22. Noticeably absent from Section 46 is any language providing that the lien created thereby shall be effective against an entity which acquires rights in the property before the date of the perfection, *i.e.* there is no relation back. *See Veazey,* 272 B.R. at 494–95. Moreover, nothing in Section 46 indicates that the act of filing and serving the written notice of lien required by Section 46(C) relates back to either the date the services were provided or the date the injury was sustained. *See Woodward,* 234 B.R. at 527. Rather, the plain language of Section 46(C) provides that the lien is "effective" when the required filing and service are completed prior to the injured person (or agent thereof) receiving monies in compensation for the damages sustained. *See id.*[7]

7. The court in *Woodward* specifically found that the filing of a physician's lien statement is not excepted from the automatic stay and that the filing of such liens after the bankruptcy case is filed is prohibited by 11 U.S.C. § 362(a)(4) and is void and of no effect. *See Woodward,* 234 B.R. at 528.

23. Accordingly, the liens of OSH, IPM and Remondino are limited to actual amounts payable by the insurer and not to the amount of medical services provided and, by virtue of the limiting language of Section 46(B), arose only when monies became payable from Country Mutual and not prior to such point in time.

24. When Debtor filed her petition, a bankruptcy estate was created and included her claims against third parties arising from the pre-petition Accident.

25. On the petition date, none of OSH, IPM or Remondino had provided medical services to Debtor for injuries arising from the Accident and could not, therefore, have a claim for such services much less a lien on the Settlement Proceeds. Their provision of services and the filing of physician's lien statements on a post-petition basis gave rise to liens, but such liens were not effective on the petition date. Without liens effective as of the petition date, the filing of the physician's lien statements by OSH, IPM and Remondino on a post-petition basis constitutes post-petition transfers of property of the bankruptcy estate which is subject to avoidance by Trustee under Section 549.[8]

26. By definition, a transfer under the Bankruptcy Code includes "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property." 11 U.S.C. § 101(54). To the extent that the actions taken by OSH, IPM and Remondino made their physician's liens effective on a post-petition basis (which they do not contest), they are transfers subject to the avoidance powers of Trustee under Section 549. *See Woodward*, 234 B.R. at 526.

27. Accordingly, summary judgment will be entered in favor of Trustee and against OSH, IPM and Remondino avoiding their liens under Section 549 and determining that they have no right, claim or interest in the Settlement Proceeds.

## BCBS

28. In contrast to OSH, IPM and Remondino, BCBS does not claim an interest by virtue of Section 46 but rather by virtue of the terms of its contract with Debtor. Specifically, BCBS claims that Debtor was required to hold the Settlement Proceeds in trust[9] subject to BCBS's right of subrogation under the insurance plan. The issue becomes whether the language of the BCBS insurance plan limits Debtor's (and, thus, the bankruptcy estate's) interests in any Settlement Proceeds by BCBS's right to be reimbursed from any recovery from the alleged tortfeasor or other source. *See McGreevy*, 388 B.R. at 921. If the answer to this question is in the affirmative, then the estate's interest in the settlement proceeds is equally limited.

---

**8.** If the arguments of OSH, IPM and Remondino were accepted, the ability to bring a bankruptcy case to a close where a personal injury claim was an asset would be severely impaired. If treatment was or even could be on-going on a post-petition basis, settlements could never be entered into and paid out because the possibility of the need for additional medical services in the future and the related Section 46 lien claim continuing seemingly indefinitely. This would be not only unworkable but also a significant departure in treatment of post-petition claims under the Bankruptcy Code.

**9.** The use of term "trust" in the BCBS plan does not in and of itself create a trust. *Deutsche Fin. Serv. Corp. v. Turner (In re Turner)*, 2003 WL 23838108 (Bankr.D.Kan.2003) (court not persuaded that language in security agreement stating that proceeds held in trust for secured creditor was not sufficient to establish an express or technical trust where no trust account was used and no other means of segregating creditor's proceeds were required by creditor).

29. Under Oklahoma law governing subrogation, for the "make whole" rule to not apply, the subject insurance policy must contain an "unmistakable declaration that the insurer's right to be reimbursed have priority over the injured's right to be made whole." *Reeds v. Walker*, 157 P.3d at 115. The language in the BCBS policy is unmistakable that BCBS has a right to be reimbursed with priority over Debtor's right to be made whole. Accordingly, the "make whole" rule does not apply, and BCBS has an enforceable right of subrogation under its insurance policy.

30. Several bankruptcy courts have held that subrogation rights conferred by contract, such as those granted to BCBS by its plan, are not affected by the Bankruptcy Code or the commencement of a bankruptcy case. *See French v. Frey (In re Bergman)*, 467 F.3d 536, 538 (6th Cir.2006) (citing *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962)); *McGreevy*, 388 B.R. at 922.

31. BCBS urges this Court to follow the rationale set forth in *McGreevy*, 388 B.R. at 922, which recognized and protected an insurer's subrogation rights. *McGreevy* suggests that the bankruptcy estate and any subrogated insurers are joint interest holders when a personal injury claim is property of the estate. They are charged with the task of determining each party's respective interest in the resulting settlement or judgment proceeds with recognition that the debtor's total medical claims may not yet be known. If treatment covered by an insurance policy with subrogation rights is on-going, *McGreevy* further suggests that the parties will need to estimate the amount of reimbursable, post-petition medical claims or request that the court determine the amount of such claims through an adversary proceeding. Under the plan devised in *McGreevy*, all parties are charged with ensuring that no settlement will prematurely relieve an insurer from paying valid medical claims in the future. *See id.*

32. Recognition of subrogation rights in this case is paradoxical in application. The conclusion that subrogation rights must be recognized necessarily impacts the well recognized concept that pre-petition claims are paid from pre-petition assets, *i.e.* the bankruptcy estate, with the pre-petition claims remaining unpaid being discharged. Similarly, post-petition claims of the debtor continue to be obligations of the debtor notwithstanding entry of the debtor's discharge and can be enforced against the assets of the debtor notwithstanding entry of the discharge. The solution espoused in *McGreevy* seems to run counter to these well established principles.

33. Moreover, as the Third Circuit aptly stated, "[b]ankruptcy courts are ill-equipped to divine the factual distinctions" necessary to allocate proceeds from pre-petition personal injury claims into pre- and continuing post-petition losses. *Wischan*, 77 F.3d at 878. If this Court were to follow *McGreevy*, it would be required to speculate as to the extent and value of Debtor's on-going post-petition medical needs arising from the Accident and BCBS's related subrogation rights (and potentially other unknown insurers' future subrogation rights). This Court is not equipped to make such a determination.

34. More importantly, a critical fact distinguishes this case from *McGreevy* and *Bergman*. In both *McGreevy* and *Bergman*, the insurer with rights of subrogation was the debtor's insurer at the time of the accident in question, *i.e.* pursuant to an insurance policy issued pre-petition. In this case, BCBS's contractual right to subrogation came into existence when it issued the plan to Debtor on December 15,

2007, *i.e.* post-petition. Since the BCBS plan was entered into after the petition date, BCBS did not have any right of subrogation existing on the petition date which limited the bankruptcy estate's interest in the claim arising from the Accident or the Settlement Proceeds thereof as of the Petition Date.

35. At the commencement of the case, Debtor and Trustee [10] held the legal and equitable interests in the personal injury action free of any right to subrogation claimed by BCBS because such rights had not arisen under Oklahoma law, given that (i) Debtor did not become an insured under a BCBS plan until post-petition, (ii) all of the underlying medical services for which subrogation was claimed were provided on a post-petition basis, and (iii) no right for reimbursement existed on the Petition Date. *See Calderon,* 363 B.R. at 542.[11]

36. Accordingly, summary judgment will be entered in favor of Trustee and against BCBS determining that BCBS has no right, claim or interest, by virtue of its right to subrogation under the post-petition BCBS plan or otherwise, in the Settlement Proceeds.

37. Defendants express concerns that Debtor may still claim an exemption pursuant to Okla. Stat. Ann. tit. 31, § 1(A)(21)

(Supp.2011) for personal injury recoveries up to $50,000.00. Such a concern is without foundation as the Oklahoma Supreme Court has unequivocally held that, notwithstanding the exemption contained in Section 1(A)(21), a statutory physician's lien is enforceable against proceeds from a personal injury of less than $50,000.00 although the exemption bars attachment or execution by all other creditors. *See Broadway Clinic,* 139 P.3d at 879–880.

### Conclusion

Accordingly, the Court hereby grants Trustee's Motion and denies OSH, IPM and Remondino's counter-motion.[12]

---

**10.** A bankruptcy trustee has a duty to liquidate bankruptcy estate assets, determined as of the petition date, and to distribute the proceeds thereof according the priorities set by the Bankruptcy Code. *See In re Faita,* 164 B.R. 6, 12 (Bankr.D.Conn.1994). A trustee's concern statutorily is with the distribution of the bankruptcy estate and proceeds of property of the estate to *pre-petition* creditors. *See In re Olson,* 2006 WL 2433448 (Bankr.D.Idaho 2006) (citing 11 U.S.C. §§ 704 and 726).

**11.** If OSH, IPM and/or Remondino claim subrogation rights, this same analysis applies, given their entirely post-petition provision of services to Debtor and would, likewise, defeat their claims to the Settlement Proceeds.

**12.** This is not an inequitable result—pre-petition creditors may only recover from the bankruptcy estate while OSH, IPM, Remondino and BCBS, as post-petition creditors, are not barred from collecting from Debtor. Allowing OSH, IPM, Remondino and BCBS to recover their claims from the Settlement Proceeds would disrupt the priorities established by the Bankruptcy Code and its concept of ratable distribution as any funds paid from the Settlement Proceeds would directly reduce the pro rata amount available for pre-petition unsecured creditors who cannot proceed to collect from Debtor. *See In re Olson,* 2006 WL 2433448 (Bankr.D.Idaho).